**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | |
|---|---|
| LORIN NIEWINSKI, JOHN BAKER MCCLANAHAN, as personal representative of THE ESTATE OF MELISSSA BUCHANAN, ROBERT A. BOZAICH, RONNIE JACKSON, and SHERIF B. BOTROS, individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiffs,<br><br>vs.<br><br>STATE FARM LIFE INSURANCE COMPANY and STATE FARM LIFE AND ACCIDENT ASSURANCE COMPANY,<br><br>     Defendants | Case No. 2:23-cv-4159<br><br>**COMPLAINT**<br><br>Class Action<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiffs Lorin Niewinski ("Niewinski"), John Baker McClanahan as personal representative of the Estate of Melissa Buchanan ("Buchanan"), Robert A. Bozaich ("Bozaich"), Ronnie Jackson ("Jackson"), and Sherif B. Botros ("Botros") (together, "Plaintiffs"), individually and on behalf of all others similarly situated, for their Class Action Complaint against Defendants State Farm Life Insurance Company and State Farm Life and Accident Assurance Company ("Defendants" or "State Farm"), state and allege as follows:

**I.  INTRODUCTION**

1.  This is a class action to recover amounts that Defendants charged and collected from Plaintiffs and other similarly situated owners of life insurance policies issued by Defendants on Forms 86040 and 86075 (the "Policies") in excess of amounts authorized by the express terms

of those Policies. Plaintiffs' claims and those of the proposed nationwide class (the "Class") are exclusively supported by the explicit provisions of their Policies and are not derived from any alleged conversations had, or documents reviewed, at the time of sale.

2.      Plaintiffs, individually and on behalf of members of the Class, seek to recover amounts they allege Defendants have wrongfully taken from them and other owners of the Policies across the United States.

3.      The Policies at issue are "universal life" insurance policies, the terms of which provide for a "Cash Value" consisting of monies held in trust by Defendants for Plaintiffs and members of the Class. Plaintiffs allege Defendants are contractually bound to deduct from the Cash Value only those charges that are explicitly identified and authorized by the terms of the Policies, which are fully integrated agreements.

4.      Defendants' conduct in this case concerns the determination of the "Monthly Cost of Insurance Rates," or "COI Rates" applied to the Policies. Defendants use these COI Rates to calculate a monthly "Cost of Insurance Charge," or "COI Charge," which is taken from each Plaintiffs' and Class members' Cash Value. By calculating the COI Rates in a manner that violates the express terms of the Policies, Defendants cause Plaintiffs' and the Class members' Cash Values to be lower than they otherwise would have been had Defendants properly determined the COI Rates.

5.      Defendants breach the Policies express terms in at least five ways: (a) by using unauthorized and undisclosed factors to compute the COI Rates under the Policies; (b) by using expenses to compute the COI Rates that are in excess of the Expense Charge permitted by the Policies; (c) by failing to reduce COI Rates when Defendants' expectations as to future mortality experience improved; (d) by failing to consider and use *only* their expectations of future mortality

when Defendants adjusted their COI Rates; and (e) by failing to reduce COI Rates to the full extent of mortality improvements experienced by Defendants when Defendants adjusted their COI Rates.

6.      Defendants' conduct has persisted for decades, unbeknownst to Plaintiffs and members of the Class. As set forth herein, Defendants conduct was, by its nature, inherently undiscoverable. In addition, Defendants fraudulently concealed their conduct. Finally, Defendants had an affirmative duty to truthfully disclose how they were determining the COI Rates to Plaintiffs and the Class but failed to do so.

7.      Defendants' conduct has caused, and continues to cause, material harm to Plaintiffs and the Class by wrongfully draining monies they have accumulated in the Cash Values of their Policies. Every unauthorized dollar taken from the Plaintiffs' and Class members' Cash Values is one less dollar that accumulates with interest and that can be used to: pay future premiums; increase the death benefit; use as collateral for policy loans; or withdraw as cash.

8.      And because the Policies stay in-force only so long as the Cash Value is sufficient to cover future COI Charges, Defendants' conduct causes the premature lapse of Policies or forces owners to make substantial additional payments to retain their Policies.

## II.     <u>PARTIES</u>

9.      Plaintiff Niewinski is an individual and resident of the State of Missouri whose policy was issued by Defendant State Farm Life Insurance Company in Maryland.

10.     Plaintiff Buchanan was an individual and resident of the State of Tennessee whose policy was issued by Defendant State Farm Life Insurance Company in Tennessee.

11.     Plaintiff Bozaich is an individual and resident of the State of Minnesota whose policy was issued by Defendant State Farm Life Insurance Company in Illinois.

12.    Plaintiff Jackson is an individual and resident of the State of Arkansas whose policy was issued by Defendant State Farm Life Insurance Company in California.

13.    Plaintiff Botros is an individual and resident of the State of North Carolina whose policy was issued by Defendant State Farm Life Insurance Company in North Carolina.

14.    Defendant State Farm Life and Accident Assurance Company is a life insurance company organized and existing under the laws of the State of Illinois, with its principal place of business in Bloomington, Illinois, and is registered to do business in the State of New York and the State of Wisconsin.

15.    Defendant State Farm Life Insurance Company is a life insurance company organized and existing under the laws of the State of Illinois, with its principal place of business in Bloomington, Illinois, and is registered to do business in the State of Missouri and has a registered office located at 221 Bolivar Street, Jefferson City, MO 65101.

16.    Over the years Defendants issued hundreds of thousands of Policies nationwide.

17.    Class Representatives bring this case as a class action under Federal Rule of Civil Procedure 23, on behalf of themselves and as representatives of a nationwide Class of similarly situated persons who own or owned the Policies, as more fully defined below.

## III.    JURISDICTION AND VENUE

18.    This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. § 1332(d) because this is a class action with diversity of citizenship between parties and the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and the proposed Class contains more than 100 members.

19.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to Plaintiffs' causes of action occurred in this District. Likewise,

venue is proper in this Division pursuant to Local Rule 3.2(b)(2) because Defendant State Farm Life Insurance Co. has a registered office located at 221 Bolivar Street, Jefferson City, MO 65101.

## IV.    ALLEGATIONS

### A.    Plaintiffs' Policies

20.    Plaintiff Niewinski purchased from Defendant State Farm Life Insurance Company a flexible premium adjustable whole life insurance Form 86040 policy bearing the policy number LF-0954-3201, and a policy date of June 2, 1988, with a basic amount of $75,000. Plaintiff Niewinski has always been the owner of this policy.

21.    Melissa Buchanan purchased from Defendant State Farm Life Insurance Company a flexible premium adjustable whole life insurance Form 86040 policy bearing the policy number LF-1206-8657, and a policy date of March 1, 1992, with a basic amount of $75,000 (the "Buchanan Estate Policy"). Ms. Buchanan passed away on December 3, 2016, and State Farm paid $70,276.09, which was the amount payable at the time of Ms. Buchanan's death with interest; this payment did not release State Farm from liability for the claims alleged herein. Melissa Buchanan was both the "owner" and the "insured" under the Buchanan Estate Policy, and State Farm was the effective and liable insurer of the Buchanan Estate Policy.

22.    Plaintiff Bozaich purchased from Defendant State Farm Life Insurance Company a flexible premium adjustable whole life insurance Form 86040 policy bearing the policy number LF-1256-7421, and a policy date of December 12, 1992, with a basic amount of $50,000. Plaintiff Bozaich has always been the owner of this policy.

23.    Plaintiff Jackson purchased from Defendant State Farm Life Insurance Company a flexible premium adjustable whole life insurance Form 86040 policy bearing the policy number

LF-1016-0814, and a policy date of April 24, 1989, with a basic amount of $50,000. Plaintiff Jackson has always been the owner of this policy.

24.     Plaintiff Botros purchased from Defendant State Farm Life Insurance Company a flexible premium adjustable whole life insurance Form 86040 policy bearing the policy number LF-1184-7414, and a policy date of November 21, 1991, with a basic amount of $250,000. Plaintiff Botros has always been the owner of this policy.

**B.      The Language of the Policies**

25.     An exemplar copy of the form of the Policies is attached hereto as **Exhibit A**.

26.     Defendants have administered and currently administer all aspects of Plaintiffs' Policies, as well as the Policies of members of the nationwide Class, including by collecting premiums, and determining, assessing, and deducting COI Rates and COI Charges for the Policies.

27.     Defendants are the effective and liable insurers of the respective Policies they each issued.

28.     The Policies are valid and enforceable contracts between Plaintiffs and members of the Class, on the one hand, and Defendants, on the other.

29.     Each of the Policies provides: "The [P]olicy is the entire contract," and it consists of "the Basic Plan, any amendments, endorsements, and riders, and a copy of the application."[1]

30.     The terms of the Policies are not subject to individual negotiation and are materially the same for all policy owners. They cannot be altered by an agent's representations at the time of sale.

---

[1]      Ex. A at p. 11.

31.     "Only an officer has the right to change this policy. No agent has the authority to change the policy or to waive any of its terms. All endorsements, amendments, and riders must be signed by an officer to be valid."[2]

32.     In addition to a death benefit, the Policies provide owners a savings or interest-bearing component that is identified in the Policies as the "Cash Value."

33.     Generally speaking, premium dollars are deposited into the Cash Value, from which Defendants deduct those monthly charges authorized by the terms of the Policies. The Cash Value earns interest as provided by the Policies.

34.     The money that makes up the Cash Value is the property of the policy owner and is held in trust by Defendants.

35.     Defendants may access and withdraw funds from the Cash Value only as expressly authorized by the Policies.

36.     The Policies expressly define the specific charges that Defendants may assess and deduct from a given policy owner's premium payments and the accumulated Cash Value. Defendants may deduct only those charges allowed by the Policies.

37.     Under the express terms of the Policies, an expense charge of 7.5% is deducted from each premium paid.[3]

38.     The Cash Value is equal to 92.5% of the initial premium less the monthly deduction for the first policy month:

> The cash value on any deduction date after the policy date is the cash value on the prior deduction date:
>
> (1)     plus 92½% of any premiums received since the prior deduction date,

---

[2]     Ex. A at p. 11.

[3]     Ex. A at p. 3.

(2)     less the deduction for the cost of insurance for any increase in Basic Amount and the monthly charges for any riders that became effective since the prior deduction date,

(3)     less any withdrawals since the prior deduction date,

(4)     less the current monthly deduction,

(5)     plus any dividend paid and added to the cash value on the current deduction date, and

(6)     plus any interest accrued since the prior deduction date.

The cash value on any other date is the cash value on the prior deduction date:

(1)     plus 92½% of any premiums received since the prior deduction date,

(2)     less the deduction for the cost of insurance for any increase in Basic Amount and the monthly charges for any riders that became effective since the prior deduction date,

(3)     less any withdrawals since the prior deduction date, and

(4)     plus any interest accrued since the prior deduction date.[4]

39.     The "Policy Date" is "[t]he effective date of this Policy," and the "Deduction Date" is "[t]he policy date and each monthly anniversary of the policy date."[5]

40.     The Policies authorize Defendants to take a "Monthly Deduction" from each policy owner's Cash Value each month.[6]

41.     The Policies expressly define the Monthly Deduction as follows:

**Monthly Deduction.** This deduction is made each month, whether or not premiums are paid, as long as the cash surrender value is enough to cover that monthly deduction. Each deduction includes:

(1) the cost of insurance,

---

[4]     Ex. A at p. 9.

[5]     Ex. A at p. 5.

[6]     Ex. A at p. 9.

8

(2) the monthly charges for any riders, and

(3) the monthly expense charge.[7]

42.    The Policies state that the monthly expense charge ("Expense Charge") is $4.00. [8]

43.    The Policies also expressly define how the COI Charge is calculated:

**Cost of Insurance.** This cost is calculated each month. The cost is determined separately for the Initial Basic Amount and each increase in Basic Amount. The cost of insurance is the monthly cost of insurance rate times the difference between (1) and (2), where:

(1)    is the amount of insurance on the deduction date at the start of the month divided by 1.0032737, and

(2)    is the cash value on the deduction date at the start of the month before the cost of insurance and the monthly charge for any waiver of monthly deduction benefit rider are deducted.

Until the cash value exceeds the Initial Basic Amount, the cash value is part of the Initial Basic Amount. Once the cash value exceeds that amount, if there have been any increases in Basic Amount, the excess will be part of the increases in order in which the increases occurred.[9]

44.    The Policies specify the factors Defendants may use to determine the COI Rates, which are used to calculate the COI Charges that are deducted from the Cash Value each month:

**Monthly Cost of Insurance Rates.** These rates for each policy year are based on the Insured's age on the policy anniversary, sex, and applicable rate class. A rate class will be determined for the Initial Basic Amount and for each increase. The rates shown on page 4 are the maximum monthly cost of insurance rates for the Initial Basic Amount. Maximum monthly cost of insurance rates will be provided for each increase in the Basic Amount. We can charge rates lower than those shown. Such rates can be adjusted for projected changes in mortality but cannot exceed the maximum monthly cost of insurance rates. Such adjustments cannot be made more than once a calendar year.[10]

---

[7]    Ex. A at p. 9.

[8]    Ex. A at p. 3.

[9]    Ex. A at p. 10.

[10]    Ex. A at p. 10.

45. Policies issued on Form 86075 have an identical provision for COI Rates except that it omits the reference to "sex."

46. Defendants admit that a rate "based on" factors explicitly identified in the Policies must be determined using only those identified factors.[11]

47. Thus, under the explicit terms of the Policies, Defendants are authorized to determine COI Rates for each policy year using only the specified factors and projected changes in mortality.[12]

48. Policy year, age, sex, and rate class are factors commonly understood as mortality factors used to determine the mortality expectations of an insured or group or class of insureds.[13]

49. By specifically identifying COI Rates for each policy year as based on mortality factors, Defendants agree that mortality expectations determine the COI Rates under the Policies, as confirmed by the additional provision that "[s]uch rates can be adjusted for projected changes in mortality."[14]

50. Given the language of the COI Rates provision in the Policies, and its context in the Policies as a whole, no reasonable layperson would expect that the Policies permitted Defendants to use any factor they wanted to determine COI Rates for the Policies. A reasonable

---

[11]   *See Alleman v. State Farm Life Ins. Co.*, 334 Fed. Appx. 470, 472 (3rd Cir. 2009) (affirming summary judgment in State Farm's favor, and rejecting plaintiff insured's argument that provision in life insurance policy stating charge would be "*based on the Insured's age last birthday and sex*" should be read to include other undisclosed factors, because "[b]y the plain language of these policies, it is clear that the insureds' age and sex are the only mortality factors relevant to the rate …." (emphasis added)).

[12]   Ex. A at p. 10.

[13]   *See Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 760 (8th Cir. 2020), *cert. denied*, 209 L. Ed. 2d 577 (Apr. 19, 2021) ("These enumerated factors are so-called 'mortality factors' because they relate to a policyholder's mortality risk, which allows the insurer to determine the projected mortality estimate of a policyholder based on his specific circumstances.").

[14]   Ex. A at p. 10.

layperson would instead read the specified mortality factors, in combination with the contractual limitation that rates can only be adjusted for "projected changes in mortality," to mean that only mortality expectations are used to determine COI Rates for the Policies.[15]

51.     Thus, the Policies authorize Defendants to make periodic deductions from policy owners' Cash Values including, specifically, COI Charges that are calculated using COI Rates that Defendants must determine based on specified factors, and that can be adjusted for projected changes in mortality.

52.     The Policies also disclose an expense charge set at a fixed percentage of seven and a half percent of each premium payment made. The Policies further disclose a separate, monthly Expense Charge within the Monthly Deduction that Defendants set at a fixed amount of $4.00 per month.

**C.      Defendants' Loading of COI Rates**

53.     Although the Policies authorize Defendants to use only certain, specified factors in determining the COI Rates, Defendants use other factors, not authorized by the Policies, when determining those rates, including, without limitation, profit and expenses.

54.     By loading these factors into the COI Rates, Defendants knowingly cause those rates to be higher than what is explicitly authorized by the Policies and, as a result, withdraw COI Charges from policy owner Cash Values in amounts greater than what is permitted by the Policies.

---

[15]     *See Vogt*, No. 2:16-cv-04170-NKL, 2018 WL 1747336, at *4 ("Given the COI language in the Vogt policy and its context in the policy as a whole, the Court believes no reasonable lay person would expect that State Farm was permitted to use any factor it wanted to calculate the cost of insurance."), *aff'd*, 963 F.3d at 763-64 (concluding "a person of ordinary intelligence purchasing an insurance policy would not read the provision and understand that where the policy states that the COI fees will be calculated 'based on' listed mortality factors that the insurer would also be free to incorporate other, unlisted factors into this calculation.").

55. By loading unauthorized factors in the COI Rates, Defendants repeatedly breached and continue to breach the Policies and impermissibly inflate the COI Rates.

56. As a direct and proximate result of Defendants' breaches, Plaintiffs and the Class have been damaged, and those damages are continuing in nature in that Defendants deducted and will continue to deduct unauthorized COI Charges from policy owners' Cash Values.

57. Defendants' conduct is intentional and willful. Defendants have not taken any steps to remove non-mortality loads from COI Rates and COI Charges for the Policies. Plaintiffs and the Class are therefore forced to continue suffering the unlawful deductions or lose their life insurance. Defendants' intentional and willful breaches justify punitive damages.

### D. Defendants Include Excess Expenses in COI Rates

58. By including expenses in the COI Rates, Defendants repeatedly and continuously breach the Policies by impermissibly deducting from the Cash Values of Plaintiffs and the Class amounts in excess of the fixed Expense Charges expressly authorized by the Policies.

59. As a direct and proximate result of Defendants' breaches, Plaintiffs and the Class have been damaged and those damages are continuing in nature in that Defendants have deducted and will continue to deduct expenses, including without limitation, maintenance, administrative, and other expenses, from the Cash Values of Plaintiffs and the Class in amounts not authorized by the Policies.

60. By including expenses in the COI Rates in excess of the monthly Expense Charge expressly authorized by the Policies, Defendants are causing monthly Expense Charges for the Policies to be greater than the Policies explicitly authorize. As a result, Defendants continue to withdraw charges from policy owner Cash Values in amounts greater than what is permitted by the Policies.

61. As a direct and proximate result of Defendants' conduct, Plaintiffs and the Class have been damaged, and those damages are continuing in nature in that Defendants deducted and will continue to deduct unauthorized charges from policy owners' Cash Values.

62. Defendants' conduct is intentional and willful. Defendants have not taken any steps to remove expenses from the COI Rates and COI Charges in excess of the expenses permitted to be deducted by the Expense Charge provision of the Policies. Plaintiffs and the Class are therefore forced to continue suffering the unlawful deductions or lose the life insurance. Defendants' intentional and willful breaches justify punitive damages.

**E. Defendants Have Failed to Reduce COI Rates**

63. The COI Rates provision requires Defendants to reduce the COI Rates when Defendants' expectations as to future mortality experience improve. Defendants did not do so.

64. That COI Rates are based on mortality factors means that Defendants were required to determine the COI Rates by reference to mortality tables. Mortality tables are charts showing the rate of death (either as a percentage or as the number of deaths per thousand individuals) at a given age. Actuaries and insurers use mortality tables to determine insurance rates that are intended to reflect expectations of future mortality.

65. Beginning at least as early as 1941, the National Association of Insurance Commissioners ("NAIC") has periodically issued a series of Commissioners Standard Ordinary ("CSO") mortality tables. These are industry standard mortality tables that are commonly used by insurers to calculate reserves and to set maximum permitted cost of insurance rates in universal life insurance policies.

13

66.     The 1980 table issued by the NAIC was called the 1980 Commissioners Standard Ordinary Smoker or Nonsmoker Mortality Table ("1980 CSO Mortality Table"). That table was the industry-standard table until 2001.

67.     At the request of the NAIC, the Society of Actuaries ("SOA") and the American Academy of Actuaries (the "Academy") produced a proposal for a new CSO Mortality Table in 2001. The accompanying report from June 2001 explained that (a) the 1980 CSO Mortality Table was still the industry-standard table and (b) expected mortality rates had improved significantly each year since the 1980 table was issued. The report stated: "The current valuation standard, the 1980 CSO Table, is almost 20 years old and mortality improvements have been evident each year since it was adopted. . . . [C]urrent mortality levels . . . are considerably lower than the mortality levels underlying the 1980 CSO Table.[16]

68.     The report further explained that "[f]or most of the commonly insured ages (from about age 25 to age 75), the proposed 2001 CSO Table mortality rates are in the range of 50% to 80% of the 1980 CSO Table."

69.     The final proposed tables were adopted as the 2001 Commissioners Standard Ordinary Mortality Table ("2001 CSO Mortality Table") which, as the report indicated, reflected vastly improved mortality experience as compared to the 1980 CSO Mortality Table. These mortality improvements represent a substantial benefit that Defendants should have passed on to Plaintiffs and the Class.

---

[16]     *Report of the American Academy of Actuaries' Commissioner's Standard Ordinary (CSO) Task Force*, Presented to the National Association of Insurance Commissioners' Life and Health Actuarial Task Force (LHATF), June 2001, available at http://www.actuary.org/pdf/life/cso2_june01.pdf.

70.    Since the 2001 CSO Mortality Tables were published, the SOA and the Academy have periodically published, from surveys of life insurers, new tables showing continued consistent and significant mortality improvement. For example, the Academy's 2015 report observed: "The current CSO table was created in 2001 based on experience from 1990-1995 and thus, is at least 20 years old. *Since that time, industry experience studies performed by the Society of Actuaries Individual Life Experience Committee (ILEC) have shown significant improvement in the mortality rates experienced by the industry from that underlying the 2001 CSO table development*."[17]

71.    Other surveys of insurers conducted by the SOA between 2002 and 2009 also show that mortality has steadily decreased since the issuance of the 2001 CSO Mortality Table. For instance, the SOA published Individual Life Experience Reports for the periods 2002-2004,[18] 2005-2007,[19] 2008-2009,[20] and 2009-2013,[21] each of which showed significant improvement in mortality. Defendants were two of the surveyed companies included in each of these studies.

---

[17]    Am. Academy of Actuaries, *Report on the 2017 CSO and 23017 CSO Preferred Structure Table Development* (Oct. 2018), https://www.soa.org/Files/Research/Exp-Study/research-2017-cso-report.pdf (emphasis added).

[18]    Society of Actuaries, *Report of the Individual Life Insurance Experience Committee Mortality under Standard Individually Underwritten Life Insurance Between 2002 and 2004 Policy Initiatives* (Dec. 2004), https://www.soa.org/resources/experience-studies/2005-2009/02-04-iindividual-life-exp-rpt/.

[19]    Society of Actuaries, *Report of the Individual Life Insurance Experience Committee Mortality for Standard Individually Underwritten Life Insurance Between 2005 and 2007 Policy Anniversaries* (Feb. 2010), https://www.soa.org/resources/experience-studies/2010/2005-2007-ind-life-report/.

[20]    Society of Actuaries, *2008-09 Report of the Individual Life Insurance Experience Committee* (April 2013), https://www.soa.org/experience-studies/2017/2009-13-indiv-life-ins-mort-exp/.

[21]    Society of Actuaries, *2009-2013 Individual Life Insurance Mortality Experience Report* (Oct. 2017), https://www.soa.org/experience-studies/2013/research-2008-2009-ind-life-exp/.

72.     The SOA also periodically publishes updated mortality tables that reflect insurers'

changing experience, including (a) 1990-95 Basic Select and Ultimate Mortality Tables;[22] (b) 2001

Valuation Basic Mortality Table;[23] (c) 2008 Valuation Basic Table;[24] and (d) 2015 Valuation Basic

Table.[25] Consistent with the foregoing, these tables confirm that mortality continued to improve

substantially since issuance of the Policies.

73.     Other surveys have also noted significant improvements in mortality expectations.

In May of 2013, for instance, the reinsurance company RGA published a report sponsored by the

SOA enumerating mortality rates and mortality improvements at older ages.[26]

74.     This study, which was based on a survey of insurance companies—including

Defendants—showed material rates of mortality improvement. As another example, in March

2014 the actuarial firm Milliman published a report sponsored by the SOA—also based on a survey

of insurance companies that included Defendants—called the "Select Period Mortality Survey,"

which confirmed that select rates of mortality improved significantly since 2001.[27]

---

[22]     Society of Actuaries, *1990-95 Basic Select and Ultimate Mortality Tables for Individual Life Insurance*, https://www.soa.org/experience-studies/2000-2004/90-95-basic-select/.

[23]     Society of Actuaries, *Final Report of the Individual Life Insurance Valuation Mortality Task Force 2001 – Valuation Basic Mortality Table [2001 VBT]* (April 2005), https://www.soa.org/experiencestudies/ 2005-2009/final-report-life-insurance-valuation/.

[24]     Society of Actuaries, *2008 Valuation Basic Tables [VBT] Report* (June 16, 2009), https://www.soa.org/experience-studies/2005-2009/2008-vbt-report-tables/.

[25]     Society of Actuaries, *2015 Valuation Basic Report and Tables* (Sept. 13, 2018), https://www.soa.org/experience-studies/2015/2015-valuation-basic-tables/.

[26]     Tim Rozar, Catie Muccigrosso, Susan Willeat, RGA, *Report on the Survey of Older Age Mortality and Other Assumptions* (May 2013), https://www.rgare.com/docs/default-source/default-document-library/older-age-mortality.pdf?sfvrsn=dc9ad888_0.

[27]     Allen M. Klein, Michelle L. Krysiak, Milliman, *Select Period Mortality Survey* (March 2014), available at https://www.soa.org/research-reports/2014/research-2014-select-period/.

75.     These well documented mortality improvements that have appeared since the Policies were issued represent a substantial financial benefit to Defendants in the form of decreased costs of providing insurance.

76.     Defendants were contractually required to pass this financial benefit to the holders of the Policies through decreased COI Charges but failed to do so. Defendants' conduct is intentional and willful. Defendants made an affirmative decision to not fully pass-on the improvements in mortality, in the form of calculating lower COI Rates each time Defendants experience better-than-anticipated mortality expectations, to Plaintiffs and the Class. Plaintiffs and the Class are therefore forced to continue suffering the unlawful deductions or lose the life insurance. Defendants' breaches justify punitive damages.

77.     At a minimum, Defendants abused their contractual discretion by failing to reduce COI Charges. Defendants are vested with contractual discretion to adjust COI Rates based on "projected changes in mortality." They abused their contractual discretion by failing to adjust their COI Rates in a manner favorable to Plaintiffs and the Class in response to mortality improvements.

**F.     Defendants Have Failed to Base COI Rate Changes On Projected Mortality**

78.     The Policies require Defendants, when they make the decision to adjust their COI Rates, to base those COI Rates on their expectations of future mortality.

79.     Defendants, in breach of the express language of the Policies, considered and used factors other than their mortality experience when they adjusted the COI Rates on the Policies in 1990, 2002, and 2008.

80.     State Farm does not dispute that it considered and used non-mortality factors when it adjusted its COI Rates in 1990, 2002, and 2008.

81. Defendants' conduct is intentional and willful. Defendants made an affirmative decision to not fully pass-on the improvements in mortality, in the form of determining lower COI Rates when Defendants did set new COI Rates, to Plaintiffs and the Class. Plaintiffs and the Class are therefore forced to continue suffering the unlawful deductions or lose the life insurance. Defendants' breaches justify punitive damages.

## G.     Any Statute of Limitations has Been Tolled.

82. Any applicable statute of limitations has been tolled for at least five reasons: (a) Defendants' conduct was inherently undiscoverable; (b) Defendants fraudulently concealed their conduct; (c) operation of the doctrine of equitable tolling; (d) Defendants' had an affirmative duty to disclose the factors they were considering and using in determining the COI Rates to Plaintiffs and members of the Class but did not do so; and (e) Defendants' breaches are continuing in nature. Each basis is set forth in greater detail below, but regardless of which applies, the result is the same: any applicable statute of limitations has been tolled, in whole or in part, and Plaintiffs and the Class's claims are therefore timely.[28]

### i.     *Defendants' conduct was inherently undiscoverable.*

---

[28]     *See Vogt v. State Farm Life Ins. Co.*, No. 2:16-CV-04170-NKL, 2018 WL 1747336, at *6-*8 (W.D. Mo. Apr. 10, 2018) (rejecting State Farm's statute of limitations arguments regarding its '94 policy); *Jaunich v. State Farm Life Ins. Co.*, 569 F. Supp. 3d 912, 918 (D. Minn. 2021) (same); *Page v. State Farm Life Ins. Co.*, No. SA-20-CV-00617-FB, 2022 WL 718789, at *16-17 (W.D. Tex. Mar. 10, 2022) (same); *Bally v. State Farm Life Ins. Co.*, 536 F. Supp. 3d 495, 516 (N.D. Cal. 2021) (granting plaintiff's motion for summary judgment as to the statute of limitations issue, concluding that "class members failed to discover any breach of contract, not because of a lack of diligence, but because the Policy was at best ambiguously drafted and because the nature of the harm was such that it was not obvious to policyholders. State Farm's extrinsic evidence does not show that State Farm ever put policyholders on notice.").

83. The nature of Defendants' conduct is such that Plaintiffs and each member of the Class would be unaware that Defendants were engaging in wrongdoing by taking inflated charges and improper amounts from their Cash Values.

84. Defendants possess the actuarial information and equations underlying the computation of rates and charges for the Policies. The COI Rates used to calculate the COI Charges are not disclosed to policy owners, nor are the components or factors that comprise those rates. Even if they were, Plaintiffs and the Class would lack the knowledge, experience, and training to reasonably ascertain how Defendants calculated the rates and charges.

85. Nor could Plaintiffs and members of the Class have learned of how Defendants determined COI Rates, even if they had asked Defendants. Defendants guard their determination of COI Rates in a manner akin to a "state secret," with only a small, select group of employees having access to this information. Just as KFC and Coca-Cola do not disclose their recipes to consumers, neither does State Farm disclose its COI Rate "recipe."

86. State Farm also does not provide its agents with its COI Rate "recipe." These agents serve as Plaintiffs and Class members' primary point of contact with Defendants for matters related to the Policies. Consequently, because these agents do not know how State Farm determines its COI Rates, they necessarily could not have provided that information to Plaintiffs and the Class, had they asked.

87. Defendants were aware that Plaintiffs and each member of the Class did not know about the improper COI Rates because of Defendants' superior knowledge of the aforementioned determinations.

88. Despite reasonable diligence on their part, Plaintiffs were kept ignorant by Defendants of the factual bases for these claims for relief.

89. Based on the foregoing, Defendants' conduct was inherently undiscoverable, and any statute of limitations has been tolled as a result. Plaintiffs' and the Class's claims are therefore timely.

*ii.* ***Defendants fraudulently concealed their conduct.***

90. Defendants also took affirmative steps to fraudulently conceal the impropriety of their COI Rate determinations.

91. First, Defendants sent Plaintiffs and each member of the Class annual statements that identified each month's COI Charge while affirmatively concealing the factors Defendants used to determine the COI Rates.

92. Second, Defendants sent notices to Plaintiffs and members of the Class in 2002 and 2008 that affirmatively concealed the fact that it was improperly determining the COI Rates. In particular, those notices make no mention of the fact that State Farm had considered and used non-mortality factors in determining its COI Rates, and instead suggest that the COI Rate changes were based wholly on changes to Defendants' projected changes in mortality. Put differently, by telling Plaintiffs and members of the Class that they were doing what the Policies required them to do (when in fact, they had not), Defendants' statements in 2002 and 2008 fraudulently concealed Defendants' breaches.

93. Plaintiffs and members of the Class reasonably relied to their detriment on Defendants' fraudulent concealment of their misconduct and material omission of the factors actually used to determine and calculate the deductions from policy owners' Cash Values. As a result of such concealment, Plaintiffs and members of the Class did not believe they had suffered any injury or that it was necessary to file a lawsuit. Plaintiffs did not discover and, exercising reasonable diligence, could not have discovered the facts establishing Defendants' repeated

breaches or the harm caused thereby. Plaintiffs did not learn of Defendants' repeated breaches supporting their claims until after they engaged counsel.

94. Based on the foregoing, Defendants fraudulently concealed their conduct, and any statute of limitations has been tolled as a result. Plaintiffs' and the Class's claims are therefore timely.

### iii. *The doctrine of equitable tolling applies.*

95. Defendants are estopped from asserting a statute of limitations defense. Defendants' conduct in failing to disclose the true factors they used—and continue to use—to determine the COI Rates misled Plaintiffs and prevented them from learning the factual bases for these claims for relief.

96. Plaintiffs proceeded diligently to file suit once they discovered the need to proceed.

97. Based on the foregoing, Defendants should be estopped from asserting a statute of limitations defense. Plaintiffs' and the Class's claims are therefore timely.

### iv. *Defendants' duty to disclose.*

98. Insurance companies owe a duty to disclose material facts to their insureds. Defendants are insurance companies, and Plaintiffs and members of the Class are their insureds. Defendants thus owe Plaintiffs and members of the Class a heightened duty. Where there is a duty to disclose arising from the relationship between the parties, a party's failure to disclose material facts, without more, constitutes fraudulent concealment and tolls the applicable statute of limitations.

99. Plaintiffs and members of the Class have been in a contractual relationship with Defendants since no later than 1993 and trusted Defendants to act in good-faith and safeguard their property – the Cash Value of their universal life insurance policies. In addition, and unlike most

insurance policies (e.g., auto, home, health, term life, etc.), the insurer of a universal life insurance policy possesses and controls the insured's Cash Value, which is property belonging to the insured.

100. From the insured's Cash Value, Defendants deduct each month the Expense Charge and the COI Charge. The insured is completely reliant upon Defendants to do what they say they are going to do in withdrawing the charges from the policy's Cash Value, because Defendants do not reveal how it makes its calculations.

101. At a minimum, this relationship qualifies as "special" or "quasi-fiduciary."

102. Defendants' methodology for determining COI Rates was material information, and Defendants therefore had a duty to disclose the factors it was considering and using when determining its COI Rates.

103. Contrary to that duty, Defendants did not disclose its determination of COI Rates. Because Defendants owed a heightened duty to Plaintiff and members of the Class, its failure to disclose its consideration and use of non-mortality factors in determining its COI Rates reinforces Plaintiff's argument that the statute of limitations was tolled.

104. Based on the foregoing, Defendants breached their duty of disclosure to Plaintiffs and members of the Class, thereby tolling any applicable statute of limitations. Plaintiffs and the Class's claims are therefore timely.

*v.* ***Defendants' breaches are ongoing, occurring each month.***

105. Defendants' breaches are ongoing and continuing in nature.

106. Each month, Defendants take from the Plaintiffs' and the Class's Cash Values COI Charges that are calculated using improperly determined and unauthorized COI Rates.

107.    Based on the foregoing, Plaintiffs and Class's claims are timely in full—because

Defendants' conduct continues to this day—or in part—because each breach represents a new

actionable cause of action.

## V.    CLASS ALLEGATIONS

108.    Class Representatives bring this case as a class action under Federal Rule of Civil

Procedure 23, on behalf of themselves and as representatives of the following Class:

> All persons or entities who own or owned one of approximately 450,000 Form
> 86040/A86040 universal life insurance policies or Form 86075/A86075 universal
> life insurance policies in the United States that were issued and administered by
> one or more Defendant or their predecessors in interest, including all applications,
> schedules, riders, and other forms specifically made a part of the policies at the time
> of their issue, plus all riders and amendments issued later, or otherwise part of "The
> Contract," as defined in the Policy or Policies.

> Excluded from the Class are the Defendants; any entity in which the Defendants
> has a controlling interest; any of the officers, or members of the board of directors
> of Defendants; the legal representatives, heirs, successors, and assigns of the
> Defendants; anyone employed with Plaintiffs' counsel's law firms; and any Judge
> to whom this action or a Related Action[29] is assigned, and his or her immediate
> family.

109.    The Class satisfies the numerosity, commonality, typicality, adequacy, and

superiority requirements of a class action under Rule 23, as set forth more fully herein.

110.    ***Numerosity.*** The persons who fall within the Class number in the hundreds of

thousands, and thus the numerosity standard is satisfied. Because Class members are

geographically dispersed across the United States, joinder of all Class members in a single action

---

[29]    "Related Action(s)" means *Millwood v. State Farm Life Insurance Company*, Case No.
7:19-cv-01445-DCC, currently pending in the United States District Court for the District of South
Carolina, and *McClanahan v. State Farm Life Ins. Co.*, Case No. 1:22-cv-01031-STA-JAY
originally filed in the Western District of Tennessee, and now on appeal in the U.S. Sixth Circuit
Court of Appeals, Case No. 23-5578, *Gettys Millwood, et al v. State Farm Life Insurance
Company*.

is impracticable. Class members may be informed of the pendency of this class action through direct mail.

111. **Commonality.** There are questions of fact and law common to the Class that predominate over any questions affecting only individual members. The questions of law and fact common to the Class arising from Defendants' actions include the following, without limitation:

a. Whether Defendants are permitted by the Policies to determine the COI Rates using factors other than those specified in the Policies;

b. Whether Defendants added, included, used, or relied on factors not specified in the Policies when determining the COI Rates used to calculate the COI Charges for the Policies;

c. Whether Defendants added, included, used, or relied on factors unrelated to their expectations of future mortality experience in determining the COI Rates that the Policies provide are determined using specified mortality factors and no other specified factors;

d. Whether Defendants are permitted by the Policies to deduct expense amounts from policy owners' Cash Values in excess of the amounts disclosed in the Policies;

e. Whether Defendants are required by the Policies to reduce COI Rates when their expectations as to future mortality experience improve;

f. Whether Defendants are required by the Policies to reduce COI Rates to the full extent of mortality improvements experienced by Defendants;

g. Whether Defendants abused their discretion under the Policies;

h. Whether Defendants' expectations as to future mortality experience improved such that Defendants were required by the Policies to reduce COI Rates;

i. Whether Defendants charged amounts in excess of those specifically authorized by the Policies;

j. Whether Defendants breached the terms of the Policies;

k. Whether Defendants converted Class members' property;

l. Whether the Class was injured and sustained damages as a result of Defendants' wrongful conduct;

m. Whether the Class is entitled to damages, restitution, and/or other relief as a remedy for Defendants' conduct; and

n. Whether the Class is entitled to declaratory relief stating the proper construction and/or interpretation of the Policies.

112.     ***Predominance.*** The questions set forth above predominate over any questions affecting only individual persons. Defendants have acted or refused to act on grounds generally applicable to the Class. The presentation of separate actions by individual Class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants, and/or substantially impair or impede the ability of Class members to protect their interests.

113.     ***Typicality.*** Class Representatives' claims are typical of those of the Class in that Class members purchased Policies containing the same limitations on the amounts that Defendants could charge under the express terms of the Policies.

114.     ***Adequacy.*** Class Representatives are adequate representatives of the Class because they are members of the Class and their interests do not conflict with the interests of those they seek to represent. The interests of the Class members will be fairly and adequately protected by Class Representatives and their counsel, who have extensive experience prosecuting complex class litigation.

115.     ***Superiority.*** A class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the claims asserted herein. Maintenance of this action as a class action is a fair and efficient method for adjudicating this controversy. It would be impracticable and undesirable for each member of the Class who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts

and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class members.

116.    For the foregoing reasons, the Court should certify this action as a Class pursuant to Federal Rule of Civil Procedure 23(b)(3).

## VI.    CLAIMS

### COUNT I: BREACH OF CONTRACT

117.    Plaintiffs reallege and incorporate herein the allegations of the paragraphs above of this Complaint as if fully set forth herein.

118.    This claim is brought on behalf of Plaintiffs and the Class

119.    Plaintiffs and the Class purchased life insurance policies—the Policies—from Defendants.

120.    The Policies are valid and enforceable contracts between Plaintiffs and the Class, and Defendants.

121.    Plaintiffs and the Class substantially performed their obligations under the terms of the Policies.

122.    Defendants breached the Policies in five ways, as set forth herein: (a) by using unauthorized and undisclosed factors to compute the COI Rates under the Policies; (b) by using expenses to compute the COI Rates that are in excess of the Expense Charge permitted by the Policies; (c) by failing to reduce COI Rates when Defendants' expectations as to future mortality experience improved; (d) by failing to consider and use *only* their expectations of future mortality when Defendants adjusted their COI Rates; and (e) by failing to reduce COI Rates to the full extent of mortality improvements experienced by Defendants when Defendants adjusted their COI Rates.

Defendants' actions resulted in Defendants using higher COI Rates than what was explicitly authorized by the Policies.

123.     Defendants knowingly caused their COI Rates to be higher than what is explicitly authorized by the Policies.

124.     Because Defendants calculate COI Charges using inflated COI Rates, Defendants have deducted, and continue to deduct, COI Charges from the Cash Values of Plaintiffs and the Class in amounts greater than those authorized by their Policies.

125.     Defendants' practice of deducting charges in amounts not authorized by the Policies constitutes repeated breaches of the Policies.

126.     As a direct and proximate result of Defendants' breaches, Plaintiffs and the Class have been damaged.

**COUNT II: BREACH OF THE CONVENANT OF GOOD FAITH AND FAIR DEALING**

127.     Plaintiffs reallege and incorporate herein the allegations of the paragraphs above of this Complaint as if fully set forth herein.

128.     This claim is brought on behalf of Plaintiffs and the Class.

129.     The Policies include an implied covenant that Defendants will act in good faith and deal fairly with Plaintiffs and the Class, and that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

130.     Defendants breached the implied covenant of good faith and fair dealing with Plaintiffs and the Class by (a) failing to reduce COI Rates when Defendants' expectations as to future mortality experience improved; (b) by failing to consider and use only their expectations of future mortality when Defendants adjusted their COI Rates; and (c) failing to reduce COI Rates to the full extent of mortality improvements experienced by Defendants when Defendants adjusted

their COI Rates. As a consequence thereof, Plaintiffs and the Class suffered financial losses and were, therefore, injured.

131.    Defendants' decision to (a) not reduce COI Rates when Defendants' expectations as to future mortality experience improved, (b) not consider and use only their expectations of future mortality when Defendants adjusted their COI Rates and (c) not reduce COI Rates to the full extent of mortality improvements experienced by Defendants when Defendants adjusted their COI Rates also frustrated the purposes of the Policies, which was to reimburse State Farm for its actual mortality risk.

132.    As a direct and proximate cause of these breaches of the implied covenant of good faith and fair dealing and of Defendants' frustration of the purpose of the Policies, Plaintiffs and the Class have been damaged as alleged herein in an amount to be proven at trial.

## COUNT III: CONVERSION

133.    Plaintiffs reallege and incorporate herein the allegations of the paragraphs above of this Complaint as if fully set forth herein.

134.    This claim is brought on behalf of Plaintiffs and the Class.

135.    Plaintiffs and the Class have a property interest in the funds in their Cash Values.

136.    By deducting charges in unauthorized amounts from the Cash Values of Plaintiffs and the Class, Defendants misappropriate or misapply specific funds placed in the custody of Defendants for the benefit of Plaintiffs and the Class for use consistent with the terms of the Policies, without authorization or consent, and divert those funds for their own use.

137.    As a direct and proximate result of Defendants' conduct, Plaintiffs and the Class have been damaged and continue to be damaged.

138.     Although requiring expert testimony, the amounts of unauthorized charges Defendants take from Plaintiffs and the Class are capable of determination, to an identified sum, by comparing Plaintiffs' actual COI Charge each month to a COI Charge computed using a COI Rate determined using the mortality factors disclosed in the Policies.

139.     On behalf of themselves and the Class, Plaintiffs seek all damages and consequential damages proximately caused by Defendants' conduct.

140.     Defendants intended to cause damage to the Plaintiffs and the Class by deducting more than they were authorized to deduct from their Cash Values. Their conduct is, therefore, malicious and Defendants are also guilty of oppression in that their systematic acts of conversion subject Plaintiffs and the Class to cruel and unjust hardship in conscious disregard of their rights. Plaintiffs and the Class are therefore entitled to punitive or exemplary damages.

## COUNT IV: DECLARATORY AND INJUNCTIVE RELIEF

141.     Plaintiffs reallege and incorporate herein the allegations of the paragraphs above of this Complaint as if fully set forth herein.

142.     This claim is brought on behalf of Plaintiffs and the Class.

143.     An actual controversy has arisen and now exists between Plaintiffs and the Class, on the one hand, and Defendants, on the other, concerning the respective rights and duties of the parties under the Policies.

144.     Plaintiffs contend that Defendants breached and continue to breach the Policies in the following respects, each of which resulted in Defendants impermissibly increasing COI Rates for the Policies and withdrawing COI Charges from the Cash Values of Plaintiff and the Class in amounts greater than those authorized by the Policies:

      a.   By using unauthorized and undisclosed factors to compute the COI Rates under the Policies;

b. By using expenses to compute the COI Rates that are in excess of the Expense Charge permitted by the Policies;

c. By failing to reduce COI Rates when Defendants' expectations as to future mortality experience improved;

d. By failing to consider and use only their expectations of future mortality when Defendants adjusted their COI Rates; and

e. By failing to reduce COI Rates to the full extent of mortality improvements experienced by Defendants when Defendants adjusted their COI Rates.

145. Plaintiffs therefore seek a declaration of the parties' respective rights and duties under the Policies and request the Court to declare the aforementioned conduct of Defendants as unlawful and in material breach of the Policies so that future controversies may be avoided.

146. Pursuant to a declaration of the parties' respective rights and duties under the Policies, Plaintiffs further seek an injunction permanently enjoining Defendants from continuing to collect unlawfully inflated charges in violation of the Policies.

## VII. <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, request relief as follows:

a. That the Court enter an order certifying the class, appointing Plaintiffs as representatives of the Class, appointing Plaintiffs' counsel as Class counsel; and directing that reasonable notice of this action, as provided by Federal Rule of Civil Procedure 23(c)(2), be given to the Class;

b. For a judgment against Defendants for the causes of action alleged against them;

c. For compensatory damages;

d. For punitive and exemplary damages;

e.     For a declaration that Defendants' conduct as alleged herein is unlawful and in material breach of the Policies;

f.     For appropriate injunctive relief, enjoining Defendants from continuing to collect unlawfully inflated charges in violation of the Policies;

g.     For pre-judgment and post-judgment interest at the maximum rate permitted by law;

h.     For Plaintiffs' attorneys' fees;

i.     For Plaintiffs' costs and litigation expenses incurred; and

j.     For such other relief in law or equity as the Court deems just and proper.

## VIII.    DEMAND FOR JURY TRIAL

Plaintiffs hereby request a trial by jury of all issues so triable.

DATED this 22nd day of August 2023.

Respectfully submitted,

*/s/ Norman E. Siegel*

Norman E. Siegel       (MO Bar # 44378)
siegel@stuevesiegel.com
Ethan M. Lange        (MO Bar # 67857)
lange@stuevesiegel.com
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel:    816-714-7100
Fax:    816-714-7101

John J. Schirger        (MO Bar # 60583)
jschirger@millerschirger.com
Matthew W. Lytle       (MO Bar # 59145)
mlytle@millerschirger.com
Joseph M. Feierabend (MO Bar # 62563)
jfeierabend@millerschirger.com
**MILLER SCHIRGER, LLC**

4520 Main Street, Suite 1570
Kansas City, Missouri 64111
Tel:      816-561-6500
Fax:     816-561-6501

David M. Wilkerson
dwilkerson@vwlawfirm.com
**THE VAN WINKLE LAW FIRM**
11 N. Market Street
Asheville, NC 28801
Tel: 828-258-2991
Fax: 828-257-2767

Melinda R. Coolidge
mcoolidge@hausfeld.com
Nathaniel C. Giddings
ngiddings@hausfeld.com
**HAUSFELD LLP**
1700 K Street, NW
Washington, DC 20006
Tel: 202-540-7200
Fax: 202-540-7201

Sophia Goren Gold
sgold@kalielpllc.com
**KALIEL GOLD PLLC**
950 Gilman St., Ste. 200
Berkeley, CA 94710
Tel: 202-350-4783

*Attorneys for Plaintiffs*