## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

|  |  |  |
|---|---|---|
| LORIN NIEWINSKI, JOHN BAKER MCCLANAHAN as Personal Representative of THE ESTATE OF MELISSA BUCHANAN, ROBERT A. BOZAICH, RONNIE JACKSON, and SHERIF B. BOTROS, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 2:23-cv-04159-BP |
| vs. | ) ) | |
| STATE FARM LIFE INSURANCE COMPANY and STATE FARM LIFE AND ACCIDENT ASSURANCE COMPANY, | ) ) ) ) | |
| Defendants. | ) ) ) | |

### PLAINTIFFS' UNOPPOSED[1] MOTION PURSUANT TO RULE 23(e) FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEY'S FEES, COSTS, EXPENSES AND SERVICE AWARDS, AND SUGGESTIONS IN SUPPORT

Norman E. Siegel, MO Bar # 44378
Ethan M. Lange, MO Bar # 67857
**STUEVE SIEGEL HANSON LLP**

Melinda R. Coolidge
Nathaniel C. Giddings
**HAUSFELD LLP**

John J. Schirger, MO Bar # 60583
Joseph M. Feierabend, MO Bar # 62563
**SCHIRGER FEIERABEND LLC**

David M. Wilkerson
**THE VAN WINKLE LAW FIRM**

Sophia Goren Gold
**KALIEL GOLD PLLC**

*Attorneys for Plaintiffs and the Settlement Class*

---

[1] Defendants fully support approval of the settlement agreement and do not oppose Plaintiffs' Motion. *See, e.g.*, Doc. 18 (stating Defendants' position regarding approval of the settlement). By not opposing Plaintiffs' Motion, Defendants do not concede the factual basis for any claim and deny liability. The description of the proceedings, including prior proceedings and proceedings in the related cases, as well as legal, factual and expert arguments, is Plaintiffs', and Defendants may disagree with certain of those characterizations and descriptions.

# TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ iii

II.     INTRODUCTION ................................................................................................ 1

III.    FACTUAL BACKGROUND ............................................................................... 2

    A.    Summary of the Litigation .................................................................... 2

    B.    Summary of the Settlement .................................................................. 3

    C.    The Settlement Class ............................................................................ 4

    D.    The Court's Preliminary Approval Order ............................................. 5

    E.    The Class Notice Program .................................................................... 5

    F.    The Settlement Class's Positive Reaction to the Settlement ............... 7

IV.    THE SETTLEMENT SHOULD BE FINALLY APPROVED. ......................... 7

    A.    Standard for Final Approval ................................................................. 7

    B.    The Proposed Settlement Is Fair, Reasonable, and Adequate Pursuant to the Factors Identified in Rule 23(e) and *Van Horn*. ............................................................. 9

        1.    The Class Representatives and Class Counsel Have Provided Excellent Representation to the Class. ................................................ 9

        2.    The Settlement Is the Product of Arm's Length Negotiations. ........... 12

        3.    The Relief Provided by the Settlement Is Excellent. ........................... 13

        4.    The Settlement Treats Class Members Equitably Relative to Each Other, Supporting Approval of the Settlement. ............................................. 19

        5.    State Farm's Financial Condition. ....................................................... 20

        6.    The Amount of Support for the Settlement Supports Approval. ......... 21

V.     CERTIFICATION OF A SETTLEMENT CLASS REMAINS APPROPRIATE. .......... 22

VI.    THE COURT SHOULD GRANT PLAINTIFFS' MOTION FOR ATTORNEY'S FEES, COSTS, EXPENSES, AND SERVICE AWARDS. ............................................. 23

CONCLUSION ................................................................................................................. 30

CERTIFICATE OF SERVICE ......................................................................................... 31

# **TABLE OF AUTHORITIES**

**Cases**

*Advance Trust & Life Escrow Servs., LTA v. Protective Life Ins. Co.*,
    --- F.4th ----, 2024 WL 878017 (11th Cir. Mar. 1, 2024) ........................................................ 15

*Allapattah Sers., Inc. v. Exxon Corp.*,
    454 F. Supp. 2d 1185 (S.D. Fla.) ............................................................................................. 24

*Bally v. State Farm Life Ins. Co.*,
    335 F.R.D. 288 (N.D. Cal. 2020) .............................................................................................. 10

*Bally v. State Farm Life Ins. Co.*,
    536 F. Supp. 3d 495 (N.D. Cal. 2021) ...................................................................................... 14

*Bell Atl. Corp. v. Bolger*,
    2 F.3d 1304 (3d. Cir. 1993) ....................................................................................................... 22

*Carlson v. C.H. Robinson Worldwide, Inc.*,
    No. CIV 02-3780 JNE/JJG, 2006 WL 2671105 (D. Minn. Sept. 18, 2006) ............................ 22

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ...................................................................................................... 22

*Claxton v. Kum & Go, L.C.*,
    No. 6:14-CV-03385-MDH, 2015 WL 3648776 (W.D. Mo. June 11, 2015) ............................ 21

*DeBoer v. Mellon Mortg. Co.*,
    64 F.3d 1171 (8th Cir. 1995) ............................................................................................... 12, 21

*Holt v. Community America Credit Union*,
    No. 4:19-CV-00629-FJG, 2020 WL 12604383 (W.D. Mo. Sept. 4, 2020) ................................ 8

*In re Checking Acct. Overdraft Litig.*,
    830 F. Supp. 2d 1330 (S.D. Fla. 2011) ..................................................................................... 18

*In re Ins. Brokerage Antitrust Litig.*,
    282 F.R.D. 92 (D.N.J. 2012) ..................................................................................................... 23

*In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*,
    847 F.3d 619 (8th Cir. 2017) ..................................................................................................... 23

*In re Syngenta AG MIR 162 Corn Litig.*,
    61 F.4th 1126 (10th Cir. 2023) .................................................................................................. 26

*In re U.S. Bancorp Litig.*,
    291 F.3d 1035 (8th Cir. 2002) ................................................................................................... 29

Case 2:23-cv-04159-BP     Document 33     Filed 03/07/24     Page 4 of 38

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
   396 F.3d 922 (8th Cir. 2005) ............................................................................... 18

*In re Zurn Pex Plumbing Products Liab. Litig.*,
   No. 08-MDL-1958 ADM/AJB, 2013 WL 716088 (D. Minn. Feb. 27, 2013) ......................... 16

*Jaunich v. State Farm Life Ins. Co.*,
   569 F. Supp. 3d 912 (D. Minn. 2021) ..................................................................... 10

*Johnston v. Comerica Mortg. Corp.*,
   83 F.3d 241 (8th Cir. 1996) ................................................................................. 26

*Keil v. Lopez*,
   862 F.3d 685 (8th Cir. 2017) .......................................................................... passim

*Kelly v. Phiten USA, Inc.*,
   277 F.R.D. 564 (S.D. Iowa 2011) .................................................................... 12, 17

*Marshall v. Nat'l Football League*,
   787 F.3d 502 (8th Cir. 2015) ......................................................................... 18, 20

*McClanahan v. State Farm Life Ins. Co.*,
   660 F. Supp. 3d 728 (W.D. Tenn. Mar. 9, 2023) ...................................................... 16

*McClure v. State Farm Life Ins. Co.*,
   341 F.R.D. 242 (D. Ariz. Apr. 29, 2022) ................................................................ 10

*McClure v. State Farm Life Ins. Co.*,
   608 F. Supp. 3d 813 (D. Ariz. 2022) ..................................................................... 13

*Millwood v. State Farm Life Ins. Co.*,
   No. 7:19-CV-01445-DCC, 2022 WL 4396199 (D.S.C. Sept. 23, 2022) ........................ 9, 11

*Norem v. Lincoln Benefit Life Co.*,
   737 F.3d 1145 (7th Cir. 2013) ............................................................................. 15

*Page v. State Farm Life Ins. Co.*,
   584 F. Supp. 3d 200 (W.D. Tex. 2022) ................................................................... 10

*Petrovic v. Amoco Oil Co.*,
   200 F.3d 1140 (8th Cir. 1999) ............................................................................. 22

*Rawa v. Monsanto Co.*,
   934 F.3d 862 (8th Cir. 2019) ............................................................................... 25

*Rogowski v. State Farm Life Ins. Co.*,
   No. 4:22-CV-00203-RK, 2023 WL 5125113 (W.D. Mo. Apr. 18, 2023) ..................... passim

iv

*Slam Dunk I, LLC v. Connecticut General Life Insurance Co.*,
 853 F. App'x 451 (11th Cir. 2021) ......................................................... 15

*Soderstrom v. MSP Crossroads Apartments LLC*,
 No. CV 16-233 ADM/KMM, 2018 WL 692912 (D. Minn. Feb. 2, 2018) .............................. 23

*Spegele v. USAA Life Ins. Co.*,
 No. 5:17-CV-967-OLG, 2021 WL 4935978 (W.D. Tex. Aug. 26, 2021) ................................ 10

*Toms v. State Farm Life Ins. Co.*,
 No. 8:21-CV-0736-KKM-JSS, 2022 WL 5238841 (M.D. Fla. Sept. 26, 2022) ...................... 10

*Trombley v. Nat'l City Bank*,
 826 F. Supp. 2d 179 (D.D.C. 2011) ......................................................... 23

*True v. Am. Honda Motor Co.*,
 749 F. Supp. 2d 1052 (C.D. Cal. 2010) ..................................................... 25

*Tussey v. ABB, Inc.*,
 No. 06-04305-CV-C-NKL, 2012 WL 5386033 (W.D. Mo. Nov. 2, 2012) ............................ 29

*Tussey v. ABB, Inc.*,
 No. 06-04305-CV-C-NKL, 2019 WL 3859763 (W.D. Mo. Aug. 16, 2019) .......................... 24

*Van Horn v. Trickey*,
 840 F.2d 604 (8th Cir. 1988) .................................................... passim

*Vill. Bank v. Caribou Coffee Co., Inc.*,
 No. 19-CV-1640 (JNE/HB), 2020 WL 13558808 (D. Minn. July 24, 2020) ........................ 12

*Vogt v. State Farm Life Ins. Co.*,
 No. 2:16-CV-04170-NKL, 2018 WL 1747336 (W.D. Mo. Apr. 10, 2018) ...................... 13, 14

*Vogt v. State Farm Life Ins. Co.*,
 No. 2:16-CV-04170-NKL, 2018 WL 1955425 (W.D. Mo. Apr. 24, 2018) ............................ 10

*Vogt v. State Farm Life Ins. Co.*,
 963 F.3d 753 (8th Cir. 2020) ......................................................... 10, 13

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
 396 F.3d 96 (2d Cir. 2005).......................................................... 26, 27

*Whitman v. State Farm Ins. Co.*,
 No. 3:19-CV-06025-BJR, 2022 WL 4081916 (W.D. Wash. Sept. 6, 2022) ........................ 14

*Whitman v. State Farm Life Ins. Co.*,
 No. 3:19-cv-6025-BJR, 2021 WL 4264271 (W.D. Wash. Sept. 20, 2021) ......................... 10

*Yarrington v. Solvay Pharms., Inc.*,
   697 F. Supp. 2d 1057 (D. Minn. 2010) ...................................................................... 23

**<u>Statutes</u>**

28 U.S.C. § 1715(b) ............................................................................................................... 5

**<u>Rules</u>**

Fed. R. Civ. P. 23 .......................................................................................................... passim

**<u>Other Authorities</u>**

4 Newberg and Rubenstein on Class Actions § 13:53 (6th ed.) .................................... 18

# I. INTRODUCTION

The $65 million class action settlement ("Settlement") before the Court between Plaintiffs Lorin Niewinski, John Baker McClanahan as personal representative of the Estate of Melissa Buchanan, Robert A. Bozaich, Ronnie Jackson, and Sherif B. Botros ("Representative Plaintiffs"), on behalf of the nationwide Settlement Class, and Defendants State Farm Life Insurance Company and State Farm Life and Accident Assurance Company (collectively, "State Farm"), is an extraordinary result for the Settlement Class Members, providing them direct cash compensation for the allegedly excessive cost of insurance charges State Farm deducted from their accounts, without the need for a claim form.[2] By any measure, the Settlement is excellent, and represents a material portion of the alleged overcharges that Settlement Class Members reasonably could have recovered at trial.

The Settlement was reached following more than four years of intensive and contentious litigation. At the preliminary approval stage, the Court concluded that the Settlement appeared to be fair, reasonable, and adequate, and that the standards for certification of a settlement class were satisfied. Having now been notified of the Settlement, the reaction of Settlement Class Members demonstrates their overwhelming support for the Settlement. Indeed, from a Settlement Class of owners of more than 450,000 policies, *no* objection to the Settlement itself has been submitted, and only a single objection, by a State Farm agent, was made as to Class Counsel's fee request, while another single objection, was made to the proposed Service Awards.[3] Representative

---

[2] All defined terms herein have the same meanings ascribed to them in the Settlement Agreement.

[3] The purported objection to the service awards fails to comply with this Court's requirements and the Federal Rules of Civil Procedure and thus is invalid. Nevertheless, Representative Plaintiffs respond to the arguments raised by the objection below.

1

Plaintiffs therefore move the Court for an order finally approving the Settlement and entering final judgment thereon.

## II. FACTUAL BACKGROUND

### A. Summary of the Litigation

A detailed history of this litigation was set forth in Plaintiffs' Motion for Preliminary Approval (Doc. 3) and the Declaration of Norman E. Siegel in support of that motion (Doc. 3-4) ("Siegel Decl."), which is incorporated by reference here. To summarize, Plaintiffs challenge how State Farm determined the cost of insurance ("COI") Rates for its universal life insurance policies issued on Forms 86040/A86040 and 86075/A86075 (the "Policies"). Plaintiffs allege the Policies do not authorize State Farm to include non-mortality profits or expenses in the COI Rates and that State Farm's use of such factors breaches its contracts with policyholders. Additionally, Plaintiffs asserted that State Farm failed to reduce COI Rates when its mortality expectations improved and, when it reduced COI Rates, State Farm failed to consider only its mortality expectations or reduce COI Rates to the full extent of its mortality improvements.

Before Plaintiffs' claims were consolidated before this Court, Plaintiffs litigated their claims in two different jurisdictions. At the time of the Settlement, one case was dismissed on statute of limitations grounds and pending appeal. In the other case, the court certified a class of policyholders, denied Plaintiff's motions for summary judgment and to exclude State Farm's experts, and took under advisement State Farm's motion for summary judgment and motion to exclude Plaintiff's expert.[4]

_____

[4] Plaintiffs' Unopposed Motion Pursuant to Rule 23(e) for Preliminary Approval of Class Action Settlement (Doc. 3) accurately describes the procedural history of *Millwood*, however, Plaintiffs' Motion for Attorney's Fees, Costs, Expenses, and Service Awards (Doc. 29) erroneously states the parties' cross-motions for summary judgment and to exclude each other's

The negotiations that culminated in the Settlement were conducted at arm's length, by highly qualified and experienced counsel on both sides, and with the assistance of a highly respected and experienced mediator, the Hon. Layn Phillips (Ret.). Due to the four years of litigation and Class Counsel's experience in litigating cases of this type, including their experience litigating cases involving State Farm's successor Form 94030 policy, Class Counsel were well informed of the material facts and legal risks and well-positioned to evaluate State Farm's defenses and the risks facing the Settlement Class Members. The risk of continued litigation to Plaintiffs and the similarly situated policy owners, and to State Farm, had crystallized at the time of Settlement. The negotiations were hard-fought and non-collusive. Class Counsel advocated for a fair and reasonable settlement that serves the best interests of the Settlement Class, and the resulting $65 million Settlement should be finally approved.

### B. Summary of the Settlement

The Settlement Agreement represents a compromise regarding the claims in the Class Action Complaint. *See* Doc. 1; *see also* Doc. 3-1 ("Agreement"). Pursuant to the Agreement, State Farm funded the Settlement Fund in the amount of $65 million shortly after the Court entered its Preliminary Approval Order. *Id.* ¶¶ 1.39, 2.1. The Settlement Fund is non-reversionary (meaning no money will be returned to State Farm), *id.*, and there is no "claims process." Each Settlement Class Member will receive their share of the Net Settlement Fund pursuant to the Distribution Plan developed by Class Counsel with the assistance of the same, qualified actuary, Scott Witt, who developed the Distribution Plan for the related cases involving the Form 94030 policies. *Id.* ¶¶ 2.2-2.3.

---

experts were denied, even though State Farm's motions were still pending at the time of settlement.

Pursuant to the Agreement, Class Counsel have moved for an attorneys' fee award to be paid from the Settlement Fund in the amount of one-third of the Settlement Fund and reimbursement of costs and expenses in the amount of $824,678.54. Doc. 29; *see* Agreement, ¶ 8.1. Class Counsel have also moved for $25,000 Service Awards for each of the Plaintiffs to be paid from the Settlement Fund. Doc. 29; *see* Agreement, ¶ 8.3. The Settlement Fund will also be used to pay for the fees and expenses of the Settlement Administrator. Agreement, ¶¶ 1.19, 1.35, 1.39.

The Agreement allocates the value of the Settlement Fund across the Settlement Class pursuant to an objective Distribution Plan that is designed to provide each Settlement Class Member a minimum payment of $10 plus a *pro rata* portion of the Net Settlement Fund according to the amount of Monthly Deductions (comprised of the COI and Expense Charges) paid by each Settlement Class Member, with equitable adjustments for Settlement Class Members who still have active Policies. *See* Docs. 3-10 & 3-12 (Witt Decl. & Ex. B thereto). In exchange, Plaintiffs and the Settlement Class Members will release all claims arising out of the facts asserted in this case. Agreement, ¶¶ 3.1-3.7.

### C. The Settlement Class

The Settlement Class includes the persons or entities who own or owned one or more of approximately 450,000 Policies issued or administered by State Farm or its predecessors in interest on Forms 86040, A86040, 86075, or A86075. The Settlement Class is made up of the Owners of the Policies. *Id.* ¶¶ 1.6, 1.27.[5]

---

[5]     The Class List can be provided to the Court upon request. The class definition, along with the identification in the Final Judgment of the policy owners who have excluded themselves from the Settlement Class, satisfies Rule 23(c)(3)(B). The Settlement Class excludes State Farm; any entity in which State Farm has a controlling interest; any of the officers or members of the board

### D. The Court's Preliminary Approval Order

On October 18, 2023, the Court entered its order preliminarily approving the Settlement and ordering that notice of the Settlement should issue to the Settlement Class. Doc. 21. As discussed in more detail below, the Court concluded it would likely approve the Settlement as fair, reasonable, and adequate and certify the Settlement Class for purposes of entering judgment on the Settlement. *Id.* at 2-3.[6] The Court also appointed the undersigned Plaintiffs' counsel as Class Counsel pursuant to Rule 23(g)(3) and appointed Epiq Class Action and Claims Solutions, Inc. ("Epiq") as the Settlement Administrator. *Id.* at 4-5. The Court also approved the Class Notice and found that it and the proposed method for its delivery by first-class mail constituted the best practicable notice to the Settlement Class. *Id.* at 5-6. The Court thus directed the Settlement Administrator and the Parties to carry out the Class Notice program. *Id.* The Court set a deadline of February 9, 2024, for Settlement Class Members to submit objections to the Settlement or to opt-out of the Settlement Class and scheduled a Fairness Hearing for March 28, 2024. *Id.* at 8.

### E. The Class Notice Program

On September 1, 2023, on behalf of State Farm, Epiq served notice of the proposed Settlement on appropriate officials in accordance with the requirements under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b). Ex. 1, Declaration of Cameron R. Azari, Esq. on Implementation and Adequacy of Notice Plan (Azari Decl.), ¶ 6. From December 1, 2023, through

---

of directors of State Farm; the legal representatives, heirs, successors, and assigns of State Farm; anyone employed with Plaintiffs' counsel's firms; any Judge to whom this case, or the *Millwood* or *McClanahan* actions, has been assigned, and his or her immediate family; and the 62 policy owners who timely and properly excluded themselves from the Settlement Class. Agreement, ¶¶ 1.37, 5.3.

[6]     Docket citations to page numbers are to the CM/ECF page numbers.

December 4, 2023, Epiq mailed the Court-approved Class Notice to members of the Settlement Class. *See id.*, ¶ 12. Prior to mailing, all addresses were updated using the National Change of Address database maintained by the United States Postal Service ("USPS"), certified via the Coding Accuracy Support System and verified through Delivery Point Validation. *Id.* USPS automatically forwards Class Notices with an available forwarding address order that has not expired. *Id.*, ¶ 13. Epiq re-mailed Class Notices that were returned as undeliverable where new addresses were available through USPS information (for example, to the address provided by the USPS on returned pieces for which the automatic forwarding order has expired, but which is still during the period in which the USPS returns the piece with the address indicated; or to better addresses that may be found using a third-party lookup service).[7] *Id.* Epiq's individual notice efforts resulted in the Class Notice being delivered to over 98% of the identified Settlement Class Members. *Id.*, ¶¶ 9 & 16.

On December 1, 2023, Epiq also established a dedicated Settlement Website where Settlement Class Members have been able to obtain detailed information about the case and review key documents, including the operative Complaint, Answer, Class Notice, Settlement Agreement, Preliminary Approval Order, and Plaintiffs' Motion for Attorney's Fees, Costs, Expenses, and Service Awards. *Id.*, ¶ 17. Epiq also established a toll-free telephone number on December 1, 2023, where Settlement Class Members can call for additional information, listen to answers to FAQs, and request that a Class Notice be mailed to them. *Id.*, ¶ 18. Additionally, Epiq created an email address, so Settlement Class Members can correspond by email. *Id.*, ¶ 19.

---

[7]     Epiq sent 445,828 Class Notices, of which 8,661 Class Notices for unique Settlement Class Members remain undeliverable. *See* Azari Decl., ¶¶ 12, 13.

On January 11, 2024, Plaintiffs informed the Court of a typographical error in the Class Notice regarding expense reimbursement and that the same provision did not contain a specific reference to the Settlement Website. Doc. 27 at 1. Even though the Class Notice was replete with references to the Settlement Website, out of an abundance of caution, Plaintiffs proposed sending an update to the Class Notice in the form of a supplemental postcard regarding this provision to all Settlement Class Members who received the original Class Notice and did not opt out. *Id.* at 2 & Attachment 3. The Court authorized Epiq to mail the supplemental postcard notice. Ex. 28. On January 16, 2024, Epiq mailed the supplemental postcard notice to members of the Settlement Class who did not opt out. Azari Decl., ¶ 15.

### F. The Settlement Class's Positive Reaction to the Settlement

Only 62 policy owners (.014%) submitted valid requests to opt-out of the Settlement Class, and no objections to the Settlement were submitted. As discussed below, only one objection (by a State Farm agent) was made to Class Counsel's attorney's fee request, and another purported objection was made to the proposed Service Awards. *Id.*, ¶ 20; Doc. 23.

## III. THE SETTLEMENT SHOULD BE FINALLY APPROVED.

### A. Standard for Final Approval

Class action settlements must be approved by the Court. Fed. R. Civ. P. 23(e). The Settlement should be approved because it is fair, reasonable, and adequate under the factors set forth in Rule 23(e)(2) and those identified by the Eighth Circuit in *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988). *See* Doc. 3 at 18-20 (identifying standard).

The factors identified in Federal Rule of Civil Procedure 23(e)(2) are whether:

(A) the class representatives and class counsel have adequately represented the class;

7

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

      (i) the costs, risks, and delay of trial and appeal;

      (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

      (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

      (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The four *Van Horn* factors are: (1) the merits of the plaintiffs' case weighed against the terms of the settlement; (2) the defendants' financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement. *Van Horn*, 840 F.2d at 607. "No one factor is determinative, but the 'most important factor in determining whether a settlement is fair, reasonable, and adequate is a balancing of the strength of the plaintiff's case against the terms of the settlement.'" *Holt v. Community America Credit Union*, No. 4:19-CV-00629-FJG, 2020 WL 12604383, at *2 (W.D. Mo. Sept. 4, 2020) (quoting *Van Horn*, 840 F.2d at 607).

In granting preliminary approval of the Settlement, the Court concluded that it would likely be able to (i) approve the Settlement as fair, reasonable, and adequate under the above factors; and (ii) certify the Settlement Class for purposes of entering judgment on the Settlement. Fed. R. Civ. P. 23(e)(1)-(2); Doc. 3. There has been no change in circumstances that would warrant the Court reaching any other conclusion now. Indeed, the Settlement Class Members, now having been apprised of the Settlement, have shown their overwhelming support for it as judged by the very small number of policy owners who have chosen to exclude themselves from the Settlement Class

and the lack of objections to the Settlement from Settlement Class Members. For completeness, Plaintiffs analyze the relevant factors again below.

**B.     The Proposed Settlement Is Fair, Reasonable, and Adequate Pursuant to the Factors Identified in Rule 23(e) and *Van Horn*.**

As demonstrated below, the proposed Settlement is fair, reasonable, and adequate under the factors identified in Rule 23(e) and by the Eighth Circuit in *Van Horn* such that the Court should finally approve the Settlement.

**1.     The Class Representatives and Class Counsel Have Provided Excellent Representation to the Class.[8]**

The adequacy of representation factor supports a finding that the Settlement is fair, reasonable, and adequate. The Court concluded so in entering preliminary approval. Doc. 21 at 3 ("[T]he Court finds that: the Representative Plaintiffs and Class Counsel have provided adequate representation to the Settlement Class."). First, the Representative Plaintiffs have shown their dedication to representing the Settlement Class, each helping to develop and review the factual allegations in the Complaint and remaining committed to the case through Settlement. *See* Siegel Decl., ¶ 35; Doc. 29-1, ¶ 36. Each Plaintiff has worked with counsel to advance the litigation on behalf of themselves and all members of the proposed Settlement Class, and each supports the Settlement and advocates for its approval. *See* Siegel Decl., ¶ 35; Doc. 29-1, ¶ 36.

Second, Class Counsel are competent, experienced, and qualified, with expertise in class actions and cost of insurance cases on this and other life insurance policies, and have vigorously prosecuted the claims asserted in this case. Class Counsel have been appointed as class counsel in dozens of class actions throughout the country, including several cases against State Farm,[9] and

---

[8]     *See* Fed. R. Civ. P. 23(e)(2)(A).

[9]     *See Millwood v. State Farm Life Ins. Co.*, No. 7:19-CV-01445-DCC, 2022 WL 4396199

have significant experience handling complex disputes, including lawsuits involving life insurance contracts. *See* Doc. 3-4 (Siegel Decl.), ¶¶ 9-12 & Exs. A-E. The firms also have experience taking similar cases to trial. For instance, in June 2018, attorneys of record at Stueve Siegel and Schirger Feierabend[10] secured a jury verdict of $34,333,495.81 for Missouri policy owners in *Vogt v. State Farm Life Insurance Co.*, which was affirmed on appeal. *See* No. 2:16-cv-04170-NKL, Docs. 358 & 360 (W.D. Mo. June 6, 2018), *aff'd*, 963 F.3d 753 (8th Cir. 2020), *cert. denied*, 141 S. Ct. 2551 (Apr. 19, 2021). In December 2022, they also tried to jury verdict similar cases against Kansas City Life Insurance Company, resulting in jury verdicts of $28,362,830.96 for Missouri universal life policy owners, $908,075.00 for Kansas universal life policy owners, and $4,095,897.75 for Missouri variable universal life policy owners. *Karr v. Kansas City Life Ins. Co.*, No. 1916-CV26645 (Mo. Cir. Ct. May 10, 2023); *Meek v. Kansas City Life Ins. Co.*, No. 19-00472-CV-W-BP, Doc. 353 (W.D. Mo. Sept. 27, 2023); *Sheldon v. Kansas City Life Ins. Co.*, No. 1916-CV26689 (Mo. Cir. Ct. Nov. 2, 2023).

In 2021, attorneys from Stueve Siegel and Schirger Feierabend settled a similar case against USAA Life Insurance Company, obtaining $90 million for a class of universal life insurance policy owners. *Spegele v. USAA Life Ins. Co.*, No. 5:17-CV-967-OLG, 2021 WL

---

(D.S.C. Sept. 23, 2022); *Vogt v. State Farm Life Ins. Co.*, No. 2:16-CV-04170-NKL, 2018 WL 1955425 (W.D. Mo. Apr. 24, 2018), *aff'd*, 963 F.3d 753 (8th Cir. 2020); *Bally v. State Farm Life Ins. Co.*, 335 F.R.D. 288 (N.D. Cal. 2020); *Whitman v. State Farm Life Ins. Co.*, No. 3:19-cv-6025-BJR, 2021 WL 4264271 (W.D. Wash. Sept. 20, 2021); *Jaunich v. State Farm Life Ins. Co.*, 569 F. Supp. 3d 912 (D. Minn. 2021); *Page v. State Farm Life Ins. Co.*, 584 F. Supp. 3d 200 (W.D. Tex. 2022); *McClure v. State Farm Life Ins. Co.*, 341 F.R.D. 242 (D. Ariz. Apr. 29, 2022); *Toms v. State Farm Life Ins. Co.*, No. 8:21-CV-0736-KKM-JSS, 2022 WL 5238841 (M.D. Fla. Sept. 26, 2022).

[10]    Class Counsel John Schirger and Joseph Feierabend previously practiced under the firm name Miller Schirger, LLC, and now practice as Schirger Feierabend LLC.

4935978 (W.D. Tex. Aug. 26, 2021). And in 2018, attorneys from Stueve Siegel and Schirger Feierabend settled a similar case against John Hancock Life Insurance Company, obtaining $59.75 million for a class of life insurance policy owners. *See Larson v. John Hancock Life Ins. Co*., No. RG16813803 (Alameda Cty., Cal. May 8, 2018). In 2016, attorneys from Stueve Siegel and Schirger Feierabend settled another similar case against Lincoln National Life Insurance Company, obtaining $2.25 billion of guaranteed term life insurance with a market value of approximately $171.8 million for a class of policy owners. *See Lincoln Nat'l Life Ins. Co. v. Bezich*, No. 02C01-0906-PL-73 (Allen Cty., Ind. Feb. 4, 2016).

As to Hausfeld, Van Winkle, and Kaliel Gold, in *Millwood*, the court appointed these firms as class counsel finding the firms "qualified" due to their "extensive experience prosecuting class actions and cost of insurance cases." *See Millwood*, 2022 WL 4396199, at *7. For instance, in *In re Blue Cross Blue Shield Antitrust Litigation* (M.D. Ala.), Hausfeld and its co-counsel, including Van Winkle, reached a settlement providing for $2.67 billion in monetary relief, as well as substantial, injunctive relief for the class they represented. Doc. 3-7 at 3. And in *Hale v. State Farm Mutual Automobile Insurance Co.* (S.D. Ill.), Hausfeld and its co-counsel reached a $250 million settlement with State Farm shortly before opening statements at trial. *Id.* Kaliel Gold and Van Winkle have similarly extensive experience, having been appointed as lead counsel or co-lead counsel in numerous consumer class actions in state and federal courts across the United States. Doc. 3-8 at 1; Doc. 3-9 at 1.

Class Counsel's depth of knowledge and experience gained through the litigation here and cases challenging cost of insurance provisions in other similar life insurance policies allowed them to accurately evaluate and weigh the risks of continued litigation to reach a fair settlement of the claims asserted in this litigation, which Class Counsel believe to be in the best interests of Plaintiffs

and the Settlement Class. Doc. 3-4 (Siegel Decl.), ¶ 34. This factor thus supports finding that the Settlement is fair, reasonable, and adequate, and therefore, its final approval. *See DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995) (stating class counsel's "experience[] in this type of litigation" supports providing deference to their views as to the fairness of the settlement).

### 2. The Settlement Is the Product of Arm's Length Negotiations.[11]

The extent and scope of this litigation confirms the Court's finding that the Settlement is the product of arm's length negotiations. Doc. 21 at 3. The Settlement is the result of significant negotiation by experienced counsel on both sides with the assistance of an experienced, well-respected neutral mediator, culminating in the execution of the Agreement. *See* Doc. 3-4 (Siegel Decl.), ¶¶ 25-26. The arm's length nature of the negotiations amongst experienced counsel supports a finding that the Settlement is fair, reasonable, and adequate. *See* Comment to December 2018 Amendment to Fed. R. Civ. P. 23(e) ("[T]he involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests."); *Vill. Bank v. Caribou Coffee Co., Inc.*, No. 19-CV-1640 (JNE/HB), 2020 WL 13558808, at *2 (D. Minn. July 24, 2020) (finding that "[t]he assistance of a retired United States Magistrate Judge as a mediator in the settlement process supports the conclusion that the Settlement was non-collusive and fairly negotiated at arm's length"); *Kelly v. Phiten USA, Inc.*, 277 F.R.D. 564, 570 (S.D. Iowa 2011) (finding settlement's fairness was supported by the fact that it was reached "after significant investigation and extensive arm's-length negotiations"). This factor supports the Court's final approval of the Settlement.

---

[11]     *See* Fed. R. Civ. P. 23(e)(2)(B).

### 3. The Relief Provided by the Settlement Is Excellent.[12]

#### a. The duration, costs, risks, and delay of trial and appeal support approval of the Settlement.[13]

The $65 million Settlement Fund represents a material recovery for members of the Settlement Class, especially given the risk that, had the case proceeded through trial and all appeals, Plaintiffs and the Class could have recovered little to no damages. Doc. 3-4 at ¶ 32. The Court previously concluded that the Settlement "is an excellent result for the Settlement Class when compared to the very substantial litigation risks facing the Settlement Class Members going forward, considering (1) the only liability ruling with respect to these policies was negative and (2) the ensuing appellate risk." Doc. 21 at 2.

The Court further found that "the length of time and the expense that would be necessary to continue to litigate Plaintiffs' cases through trials and appeals would be considerable." *Id.* In the absence of the Settlement, the Settlement Class Members face significant risks, costs, and delay in reaching a litigated judgment in their favor. The only court reaching the merits dismissed the lawsuit on statute of limitations grounds and none have reached a final judgment regarding the relevant policy language. As for the latter, in litigation involving State Farm's successor policy with similar language—Form 94030—courts reached various readings of the relevant policy language. Some courts issued policy interpretation rulings supportive of the policyholders. *See, e.g.*, *Vogt v. State Farm Life Ins. Co.*, No. 2:16-CV-04170-NKL, 2018 WL 1747336, at *4 (W.D. Mo. Apr. 10, 2018), *aff'd*, 963 F.3d 753 (8th Cir. 2020); *McClure v. State Farm Life Ins. Co.*, 608

---

[12]     Fed. R. Civ. P. 23(e)(C).

[13]     Fed. R. Civ. P. 23(e)(2)(C)(i). Plaintiffs also address herein *Van Horn* factors 1 and 3: "the merits of the plaintiffs' case weighed against the terms of the settlement," and "the complexity and expense of further litigation." *Van Horn*, 840 F.2d at 607.

F. Supp. 3d 813, 826 (D. Ariz. 2022). But other courts disagreed, finding in favor of State Farm. *See, e.g.*, *Bally v. State Farm Life Ins. Co.*, 536 F. Supp. 3d 495, 508 (N.D. Cal. 2021); *Whitman v. State Farm Ins. Co.*, No. 3:19-CV-06025-BJR, 2022 WL 4081916, at *6 (W.D. Wash. Sept. 6, 2022). These disparate rulings regarding similar policy language underscore the risk of an adverse policy interpretation ruling.

In *Bally*, the court agreed with the district court's interpretation in *Vogt* and denied State Farm's first summary judgment motion. After the Eighth Circuit ruling in *Vogt*, however, it paradoxically adopted State Farm's argument that the phrase "applicable rate class" was broad enough to permit State Farm to include non-mortality factors like profits and expenses in setting its COI Rates and granted State Farm summary judgment on the COI Charge claim (although the court denied State Farm's motion as to the Expense Charge claim).[14] Importantly, the *Bally* court did not view its ruling as inconsistent with the *Vogt* interpretation, concluding that "[n]either the district court nor the Eighth Circuit in *Vogt* meaningfully considered the meaning of the phrase" applicable rate class, which left in play the risk that subsequent courts could broadly adopt the *Bally* interpretation. *Bally*, 536 F. Supp. 3d at 504 n.6. The *Whitman* court agreed with *Bally* and adopted the same adverse interpretation. *See Whitman*, 2022 WL 4081916, at *4, *7 (agreeing with *Bally* and going further to grant State Farm summary judgment on the Expense Charge and all other claims).[15]

---

[14]     The court also granted summary judgment in favor of State Farm on Bally's conversion claim.

[15]     The *Whitman* court also held that "even if the Policy requires the COI to be limited to age, sex, and applicable rate class [as *Vogt* held] the rate classes themselves are based on non-mortality factors," permitting State Farm's deductions. *Whitman*, 2022 WL 4081916, at *4 n.5.

Furthermore, while the Eighth Circuit's interpretation in *Vogt* of similar policy language was favorable to the policyholders, State Farm urged the application of the Seventh Circuit's interpretation in *Norem v. Lincoln Benefit Life Co.*, 737 F.3d 1145 (7th Cir. 2013) and the Eleventh Circuit's interpretation in *Slam Dunk I, LLC v. Connecticut General Life Insurance Co.*, 853 F. App'x 451 (11th Cir. 2021) to construe those policies as authorizing State Farm to use unlisted, non-mortality factors to determine the COI Rates.[16] Although *Vogt* is the most analogous appellate decision, at least two district courts (*Bally* and *Whitman*) did not follow the Eighth Circuit's interpretation. Thus, there remains a significant risk policy owners could recover nothing through further litigation depending on how courts interpret the policy language.

Further, State Farm has consistently and forcefully argued that Plaintiffs' expert's damages calculations are unreliable and cannot be used to prove damages class-wide. The Courts in *Millwood* and *McClanahan* had not ruled on State Farm's challenges to the admissibility of Plaintiffs' expert's opinions, nor have they been tested at trial. If Plaintiffs' expert's opinions were excluded by the court or not credited by the jury, Plaintiffs could face a substantially reduced award of damages, or a finding of no damages even if they were to prevail on liability. In addition, State Farm has disclosed four experts in these cases, including putative experts on consumer behavior, actuarial science and pricing, and insurance regulation. None of these experts have been tested at trial; and, to date, none of the courts presiding over these cases have excluded the testimony of any State Farm experts. *See* Doc. 3-4 (Siegel Decl.), ¶ 32. If these opinions were

---

[16]     Recently, the Eleventh Circuit confirmed its interpretation of the phrase "based on" as stated in *Slam Dunk* and disagreed with the Eighth Circuit's interpretation from *Vogt*. *See Advance Trust & Life Escrow Servs., LTA v. Protective Life Ins. Co.*, --- F.4th ----, 2024 WL 878017 (11th Cir. Mar. 1, 2024).

ultimately credited by the jury, the result could have been either a substantial reduction in the damages calculated by Plaintiffs' expert or a finding of no damages. *Id*. Thus, even if Plaintiffs had prevailed on liability, they faced significant risk at trial of a zero-dollar or damages award by a jury of a significantly reduced amount. *Id*.

For these reasons, even if Plaintiffs were to prevail on their interpretation of the policy language, thereby establishing State Farm's liability for breach, there is significant uncertainty as to the damages that would be recovered at trial, particularly where State Farm has challenged Plaintiffs' claims as barred or substantially limited by the statute of limitations, requiring Plaintiffs to prevail on establishing that the statute of limitations was tolled to recover. Indeed, the only court to rule on State Farm's statute of limitations defense on its Form 86040 policies, found in favor of State Farm and dismissed the lawsuit. *See McClanahan v. State Farm Life Ins. Co.*, 660 F. Supp. 3d 728, 744 (W.D. Tenn. Mar. 9, 2023), *reconsideration denied*, No. 1:22-cv-1031-STA-JAY, 2023 WL 3587556 (W.D. Tenn. May 22, 2023). Proving the Plaintiffs' claims through trial would thus be a lengthy, costly, and uncertain process. *Keil v. Lopez*, 862 F.3d 685, 698 (8th Cir. 2017) ("Class actions, in general, place an enormous burden of costs and expense upon parties. Here, the application of numerous states' laws made this a particularly complex case.") (quotations omitted); *In re Zurn Pex Plumbing Products Liab. Litig.*, No. 08-MDL-1958 ADM/AJB, 2013 WL 716088, at *7 (D. Minn. Feb. 27, 2013) (recognizing that "[t]he complexity and expense of class action litigation is well-recognized" and that "various procedural and substantive defenses . . ., the expense of proving class members' claims, the certainty that resolution under [a] settlement will foreclose any subsequent appeals, and the fear that, unsettled, the ultimate resolution of the action . . . could well extend into the distant future, all weigh in favor of the settlement's approval.")

16

(citation omitted). In contrast, the Settlement, which provides a material portion of the reasonably recoverable damages, is an excellent result.

Finally, State Farm—which has retained several lawyers from large, well-respected, and well-resourced law firms—has demonstrated it will challenge Plaintiffs' claims vigorously. Thus, even if ultimately successful at trial, policyholders would have to wait years while State Farm undoubtedly exhausted every appellate right. For example, in *Vogt*, the policyholders prevailed at trial, but State Farm appealed to the Eighth Circuit, sought rehearing by the Eighth Circuit panel and *en banc* review, moved to recall that Court's mandate, petitioned for *certiorari* to the United States Supreme Court, and fully litigated a second, collateral appeal on prejudgment interest, before ultimately paying the judgment. As it litigated its various challenges to the maximum extent possible, the class members in *Vogt*, who prevailed at trial in June 2018, were not paid until 2022. *See* Doc. 3-4 (Siegel Decl.), ¶ 33. Thus, even if Plaintiffs were to prevail on all issues in their respective cases, they would likely not obtain their due recovery for years. This delay further supports a finding that the Settlement, which provides certain recovery in the near-term and more than they could have recovered if State Farm prevailed on any one of its challenges or defenses, is a fair, reasonable, and adequate result, and should therefore be approved. *See, e.g.*, *Kelly*, 277 F.R.D. at 570 (finding the "significant risks" the settlement class members faced in adjudicating their claims; the uncertain "possibility of a large monetary recovery through future litigation" which "would occur only after considerable additional delay;" the "long and costly" litigation ahead where the defendant "has capable counsel at its disposal and intended to challenge nearly every aspect of Settlement Class Members' case;" and because even if the settlement class members were "to receive a favorable trial verdict, they still would have faced costly and lengthy appeals, delaying the receipt of benefits," all supported approving the settlement); *Keil*, 862 F.3d

at 696 ("As courts routinely recognize, a settlement is a product of compromise and the fact that a settlement provides only a portion of the potential recovery does not make such settlement unfair, unreasonable or inadequate.") (quotations omitted); *Marshall v. Nat'l Football League*, 787 F.3d 502, 515 (8th Cir. 2015) ("We have repeatedly rejected arguments that compromise was unnecessary because the party would have prevailed at trial.") (quotations omitted). Therefore, "[w]eighing the uncertainty of relief against the immediate benefit provided in the settlement" supports approval here, *see In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 933 (8th Cir. 2005), and "[t]he single most important factor" in evaluating the Settlement—"the merits of the plaintiffs' case weighed against the terms of the settlement," *Van Horn*, 840 F.2d at 607, as well as the "the complexity and expense of further litigation," *id.*, and "the duration, costs, risks, and delay of trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i), support final approval of the Settlement.

> **b.** **The effectiveness of the proposed method of distributing relief to the Settlement Class supports approval of the Settlement.[17]**

Under the Agreement, the Net Settlement Fund will be distributed pursuant to a proposed Distribution Plan with settlement checks being delivered directly to each Settlement Class Member without the submission of a claim. Agreement, ¶ 2.3. This simple process for distributing settlement relief supports final approval of the Settlement. *See, e.g.*, *In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d 1330, 1351 (S.D. Fla. 2011) ("The absence of a claims-made process further supports the conclusion that the Settlement is reasonable."); 4 Newberg and Rubenstein on Class Actions § 13:53 (6th ed.) (stating a class settlement distribution method should be "in as simple and expedient a manner as possible"); *Rogowski v. State Farm Life Ins. Co.*, No. 4:22-CV-00203-

---

[17]    Fed. R. Civ. P. 23(e)(2)(C)(ii).

RK, 2023 WL 5125113, at *3 (W.D. Mo. Apr. 18, 2023) (approving settlement where distribution of settlement "proceeds will occur automatically and without the need for a claims process").

      **c.**    **The terms for the award of attorneys' fees, including the timing of payment, support approval of the Settlement.[18]**

Class Counsel have sought their fee in the amount of one-third of the Settlement Fund created for the Settlement Class, providing a thorough analysis of the reasonableness of their request in their fee motion. Agreement, ¶ 8.1; Doc. 29. Because the fee request is reasonable, and in any event the Settlement is not conditioned upon the Court's approval of the fee award, Agreement, ¶ 8.5, the Court should approve the Settlement.[19]

      **d.**    **There is no agreement required to be identified under Rule 23(e)(3).[20]**

Under Rule 23(e)(3), "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." There is no agreement between the Parties here, except those set forth or explicitly referenced in the Settlement Agreement. Accordingly, this factor is not relevant to whether the Settlement should be finally approved.

      **4.**    **The Settlement Treats Class Members Equitably Relative to Each Other, Supporting Approval of the Settlement.[21]**

The Settlement's proposed distribution formula determines each Settlement Class Member's recovery under the Settlement according to the actual Monthly Deductions each paid

---

[18]    Fed. R. Civ. P. 23(e)(2)(C)(iii).

[19]    Similarly, Class Counsel have requested a Service Award of $25,000 for each Plaintiff and explained why this amount is reasonable. Agreement, ¶ 8.3; Doc. 29 at 42-43. Like the attorneys' fees, the Parties' Agreement is not conditioned on the Court's approval of this request. Agreement, ¶ 8.5.

[20]    Fed. R. Civ. P. 23(e)(2)(C)(iv).

[21]    *See* Fed. R. Civ. P. 23(e)(2)(D).

under their Policy for COI and Expense Charges. There is an upward adjustment proposed for current policy owners to reflect that they are still paying allegedly inflated COI Charges. The Court has concluded that "the Settlement treats the Settlement Class Members equitably relative to each other by awarding them a proportion of the Cost of Insurance and Monthly Expense Charge charges they each actually paid, in addition to providing equitable adjustments for Settlement Class Members whose policies remain in effect." Doc. 21 at 3. Thus, this factor supports final approval of the Settlement. *See Rogowski*, 2023 WL 5125113, at *3 (approving settlement with nearly identical distribution plan).

### 5. State Farm's Financial Condition.[22]

State Farm has shown both its willingness and financial ability to litigate the cases to the greatest extent possible and use every procedural and legal challenge available to it, and also is able to comply with its financial obligations under the Settlement. Plaintiffs thus submit that under Eighth Circuit precedent, this factor is neutral. *See Marshall*, 787 F.3d at 512 (finding this factor neutral where defendant was "in good financial standing, which would permit it to adequately pay for its settlement obligations or continue with a spirited defense in the litigation"); *Keil*, 862 F.3d at 697-98 (affirming finding that the defendant's financial condition factor was neutral where "[t]here is no evidence in the record calling [defendant's] financial condition into question," and the defendant had already funded the settlement).

---

[22]     *Van Horn*, 840 F.2d at 607 (factor 2).

### 6.      The Amount of Support for the Settlement Supports Approval.[23]

As explained above, Plaintiffs and Class Counsel believe the Settlement is an excellent result for the Settlement Class, especially given the risks and delay of continued litigation, as detailed above. *See* Doc. 3-4 (Siegel Decl.), ¶¶ 32-33; *see also Claxton v. Kum & Go, L.C.*, No. 6:14-CV-03385-MDH, 2015 WL 3648776, at *6 (W.D. Mo. June 11, 2015) (recognizing that when evaluating a settlement, the court should accord "deference to the attorneys in assessing their clients' claims/defenses"); *DeBoer*, 64 F.3d at 1178 (stating class counsel's "experience in this type of litigation" supports providing deference to their views as to the fairness of the settlement). Here, Class Counsel's experience litigating the cases and similar ones has provided them a thorough understanding of the risks and potential ranges of recovery in this case, which has allowed Class Counsel to fairly consider the merits of the claims here and the value of the Settlement to the Settlement Class. Plaintiffs also support and approve the Settlement, believing it to be in the best interests of the Settlement Class. Doc. 3-4 (Siegel Decl.), ¶¶ 34-35.

Further, the very small number of opt-outs and the complete absence of substantive objections to the Settlement reflects the fact that Settlement Class Members—like Class Counsel and Plaintiffs—overwhelmingly support the Settlement.[24] This favorable reception by the Settlement Class constitutes strong evidence of the fairness of the Settlement and supports its final approval. *Keil*, 862 F.3d at 698 (affirming approval of Settlement where the objections were "small in number, which speaks well of class reaction to the Settlement"); *DeBoer*, 64 F.3d at 1178 (holding that "[t]he fact that only a handful of class members objected to the settlement similarly

---

[23]      *Van Horn*, 840 F.2d at 607 (factor 4).

[24]      Class Counsel have also received anecdotal "thank yous" from members of the Settlement Class for taking on State Farm and achieving this Settlement.

weighs in its favor" where five class members objected out of a class of 300,000); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999) (approving settlement where objectors represented fewer than 4% of class); *Carlson v. C.H. Robinson Worldwide, Inc.*, No. CIV 02-3780 JNE/JJG, 2006 WL 2671105, at *4 (D. Minn. Sept. 18, 2006) (concluding "[t]he lack of objections" and "the relatively small number of opt-outs . . . show strong support for the settlement from class members"); *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313-14 & n.15 (3d. Cir. 1993) (recognizing class silence can be considered consent to settlement); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974) (noting silence of majority of class may be attributed to agreement to proposed settlement); *see also Rogowski*, 2023 WL 5125113, at *3 (approving settlement and observing there were no objections to the settlement and only a very small percentage of class members opted out from the settlement).

Here, the fact that no Settlement Class Members raised any concerns about the Settlement in such a large Settlement Class strongly bolsters the conclusion that the Settlement is fair, reasonable, and adequate.

\*      \*      \*

Accordingly, the Rule 23(e) and Eighth Circuit *Van Horn* factors support finding that the Settlement is fair, reasonable, and adequate, and therefore, it should be finally approved.

## IV. CERTIFICATION OF A SETTLEMENT CLASS REMAINS APPROPRIATE.

In its Preliminary Approval Order, the Court concluded the Settlement Class satisfied the requirements for certification under Rule 23(a) and (b)(3) for purposes of settlement. Doc. 21 at 3-4. Nothing has changed since the Court's ruling to call the Court's conclusions regarding certification of a settlement class into question. Accordingly, for the reasons set forth in their

preliminary approval motion, Plaintiffs ask that the Court certify the Settlement Class for purposes of entry of judgment on the Settlement.

## V.    THE COURT SHOULD GRANT PLAINTIFFS' MOTION FOR ATTORNEY'S FEES, COSTS, EXPENSES, AND SERVICE AWARDS.

On January 19, 2024, Plaintiffs filed their Motion and Suggestions in Support for Attorney's Fees, Costs, Expenses, and Service Awards ("Fee Motion") seeking one-third of the Settlement Fund, reimbursement of $824,678.54 in litigation costs and expenses, and service awards for the Class Representatives. *See* Doc. 29. The Fee Motion was posted to the Settlement Website. Ex. 1 (Azari Decl.), ¶ 17. As set forth in that motion and the supporting declarations of Class Counsel, a fee of one-third of the Settlement Fund is well supported by established law in this Circuit, and application of the *Johnson* factors. Doc. 29. Only one objection, by a State Farm agent, was lodged as to the requested attorney's fees (*see* Doc. 23 ("Agent Objection")); none were filed as to Class Counsel's request for reimbursement of litigation expenses.

"The absence of substantial objections by Settlement Class members to the fees requested by Class Counsel strongly supports approval." *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 121 (D.N.J. 2012).[25] Here, only one Settlement Class Member objected out of 445,000, which is "minuscule when compared with other settlements[.]" *Keil*, 862 F.3d at 698 (characterizing 14

---

[25]    *See also Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 206 (D.D.C. 2011) ("Tellingly, only one objection was received, which counsels in favor of granting class counsel's requested fee award."); *Soderstrom v. MSP Crossroads Apartments LLC*, No. CV 16-233 ADM/KMM, 2018 WL 692912, at *9 (D. Minn. Feb. 2, 2018) (finding requested fee reasonable, in part, based on the fact that "out of a Class of hundreds of Class Members, only one objection was filed"); *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1064 (D. Minn. 2010) (concluding that the class "strongly supports" the fee request of 33% of the fund "based on the fact that only one untimely objection was made"); *accord In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 847 F.3d 619, 623 (8th Cir. 2017) (affirming district court's fee award where district court, in part, relied on the fact that "there was only one objection" to the fee request).

objections out of 3.5 million class members as "miniscule," which is a *larger* percentage of the class than one out of 445,000). Moreover, on the substance, the Agent Objection does not undermine the reasonableness of the fee requested. If anything, it supports the request.

Although not disclosed in his objection, the Agent Objection was submitted by a State Farm agent.[26] Despite his involvement and history with State Farm, he is a Settlement Class Member because he purchased a Policy. This background is relevant given that his Agent Objection exhibits clear animosity toward plaintiffs' attorneys generally. He opposes the requested attorney's fees because he believes "each consumer gets $10 of 'relief' and the law firms get . . . millions of dollars."[27] *Id.* His generalized complaints about attorneys are not, however, a legal basis for reducing the fee award.

First, the Objector's stated justification for awarding a smaller fee is at odds with the governing legal standard. He appears to posit that a smaller fee will ***discourage*** lawyers from representing similar clients on a contingent basis. But the Court should award a fee that will create an "incentive [for lawyers] to consider pursuing a case such as this." *Tussey v. ABB, Inc.*, No. 06-04305-CV-C-NKL, 2019 WL 3859763, at *3 (W.D. Mo. Aug. 16, 2019).[28] Doing so ensures that

---

[26]   *See* https://www.statefarm.com/agent/us/fl/ocala/scott-cameron-jd74w1ys000 (biography for State Farm agent) (last visited Mar. 7, 2024); *see also* Doc. 23-1 (envelope from the Objector embossed with State Farm's logo).

[27]   To the extent the Agent Objection's reference to "each consumer gets $10 of 'relief'" refers to the $10 minimum payment under the Settlements Distribution Plan, it inaccurately describes the Distribution Plan. Under the Distribution Plan each Settlement Class Member is provided a *minimum* payment of $10 plus a *pro rata* portion of the Net Settlement Fund according to the amount of Monthly Deductions (comprised of the COI and Expense Charges) paid by the Settlement Class Member, with equitable adjustments for Settlement Class Members who still have active Policies. *See* Docs. 3-10 & 3-12 (Witt Decl. & Ex. B thereto).

[28]   *See also Allapattah Sers., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1217 (S.D. Fla.) ("Class Counsel has risked millions of dollars in un-reimbursed attorneys' time and additional millions in out-of-pocket costs. Unless that risk is compensated with a commensurate reward, few

future consumers harmed by corporate malfeasance receive adequate representation against well-funded defendants so their claims can be decided on the merits. The Objector's philosophical disagreement with class actions (but acceptance of monetary benefit from this one) should not preclude *other* consumers (like the rest of the Settlement Class here) from the opportunity to have their claims heard in court.

None of the *Johnson* factors suggest the Court should attempt to ascertain the subjective merit of the underlying lawsuit or propriety of class actions generally in awarding the fee. *Cf. True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1079 (C.D. Cal. 2010) ("The Court does not give any weight to arguments about the propriety of class action litigation. . ."). The requested fee is justified by the fact that Class Counsel obtained an exceptional result for the benefit of the Class, through significant legal risk and personal financial risk on a contingent basis, regardless of any Settlement Class Member's subjective belief about State Farm's liability or the propriety of class actions.

In addition, the Objector implores the Court to require Class Counsel to "provide evidence under affidavit" of "their billable hours." Doc. 23. Although there is no requirement to submit the number of hours expended in this Circuit, Class Counsel have done so.[29] *See* Doc. 29-1 ¶¶ 29-30. Nonetheless, the Eighth Circuit has acknowledged, "overly emphasiz[ing] the amount of hours

---

firms, no matter how large or well financed, will have any incentive to represent the small stake holders in class actions against corporate America, no matter how worthy the cause or wrongful the defendant's conduct.").

[29]     The Objector suggests the Court award Class Counsel "a fee no higher than the fees charged to [State Farm] . . . on an hourly basis." Doc. 23. State Farm has engaged at least three national law firms and litigated the actions for more than four years—its counsel's hours may very well exceed that of Class Counsel's, which would only underscore the reasonableness of Class Counsel's request here.

spent on a contingency fee case" would "distort the value of the attorneys' services.'" *Rawa v. Monsanto Co.*, 934 F.3d 862, 870 (8th Cir. 2019).[30] Rather, the amount recovered—the Settlement Fund—is the more accurate measure of the attorney's services than the number of hours worked in a contingency class action. *In re Syngenta AG MIR 162 Corn Litig.*, 61 F.4th 1126, 1192 (10th Cir. 2023) ("In a common fund case, the fund, itself, is the measure of an attorney's success.").

Indeed, the Objector appears to implicitly suggest that Class Counsel be limited to an award of their "billable hours" as opposed to a percentage of the fund. But as numerous courts have recognized, the lodestar method is inherently flawed insofar as it fails to align the interests of the attorneys and class members by incentivizing counsel to maximize the class's recovery. *See Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 245 (8th Cir. 1996). Undue focus on hours or hourly rates "creates an unanticipated disincentive to early settlements, tempts lawyers to run up their hours, and compels district courts to engage in a gimlet-eyed review of line-item fee audits." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (cleaned up).

---

[30]  While a lodestar crosscheck is "not required" in the Eighth Circuit, *Keil*, 862 F.3d at 701, Class Counsel submitted a lodestar crosscheck analysis, showing hours spent in these actions through mid-January 2024 with significant additional time anticipated on settlement administration tasks if the Settlement is finally approved, resulting in a lodestar multiplier of 2.73. Doc. 29-1, ¶¶ 29-30. As explained in Plaintiffs' Fee Motion, a multiplier in this range, and even one larger, is eminently reasonable given the circumstances of this unique case and risks faced by Class Counsel. As set forth in the Supplemental Joint Declaration, attached hereto as Exhibit 2, Class Counsel have continued to spend time on this litigation, spending an additional 320 hours on various litigation and settlement tasks, including responding to class member inquiries about the Settlement, providing updates to the courts previously overseeing the related actions on the status of the settlement approval process here, and preparing the additional motions briefing and supporting material submitted to the Court. *See* Ex. 2, ¶ 3. These additional hours at the previously identified hourly rates reduces the multiplier to 2.64, further establishing that Class Counsel's fee request is reasonable under a lodestar crosscheck analysis. *See id.* ¶ 4.

Finally, the Objector attaches, as "support" for his Objection an article from The American Tort Reform Association, an advocacy group that incorrectly (and inflammatorily) argues that class actions are "a means of defendant extortion" because class actions force defendants to settle "early on" to "avoid costly litigation" while rewarding "the plaintiffs' counsel with millions in fees."[31] Not surprisingly, the article selectively highlights results of a few cases in an effort to argue class actions only benefit the lawyers, including a case where the "attorneys received almost four times as much as the class members" and citing an example of a claims-made settlement where "class counsel received $7,065,940 in attorneys' fees and litigation costs while only $1,768,625 was allocated to the settlement class." *See* Doc. 23 at 3. Whatever the circumstances of the settlements in these other cases depicted in the article, which were subject to the approval of other courts, the situation complained of in the article is not present here. Unlike those cases, Class Counsel is not requesting "four times as much" as the benefit provided to class members. On the contrary, in this common fund case, Class Counsel seeks an amount well within the traditional percentages approved in the Eighth Circuit and this District. Thus, if anything, the Objection supports, rather than detracts from, the requested fee in terms of the relevant legal factors. *See Rogowski*, 2023 WL 5125113, at *5 (overruling similar objection and awarding one-third of the settlement fund).

For these reasons, the Court should overrule the objection and grant Class Counsel's Fee Motion with respect to an award of Attorney's Fees.

The Fee Motion also requests reimbursement of Class Counsel's litigation costs and expenses in the amount of $824,678.54. Doc. 29. No objections were received related to Class

---

[31] *See* https://www.atra.org/issue/class-action-reform/ (last visited Mar. 7, 2024).

Counsel's cost and expense reimbursement request, even though Class Counsel could have sought up to $1.1 million under the Settlement. And because the costs and expenses incurred are reasonable, Class Counsel's request for reimbursement of expenses should be approved. *See Rogowski*, 2023 WL 5125113, at *5 (noting no objections were received to the request for expense reimbursement and finding the costs and expenses reasonably incurred).

Finally, only one Settlement Class Member has submitted an objection to the requested Service Awards, indicating the Settlement Class's overwhelming support for awarding $25,000 to each Plaintiff for their important contributions to this case for the Settlement Class's benefit. *See* Doc. 29 at 42-43. As for the lone objection, it fails to meet the requirements to be considered a valid objection. Under Rule 23 and the requirements this Court approved in the Class Notice, an "objection *must* include the following information:

> . . .
>
> - A statement whether the objection applies only to the objector, to a specific subset of the Settlement Class, or to the entire Settlement Class; and
>
> - The signature of you or your counsel.

*See* 27-1 at 6-7 (emphasis added); *see also* Fed. R. Civ. P. 23(e)(5)(A) ("The objection must state whether it applies only to the objector, to a specific subset of the class, or to the entire class"). But the objection is not signed and does not state whether it applies only to the objector, to a specific subset of the Settlement Class, or to the entire Settlement Class. *See* Doc. 30-1. Thus, the objection is invalid.

Nevertheless, the objection fails on the merits as well. First, the objection on its face misapprehends that Settlement Class Members' distributions will be reduced by up to $25,000 with the difference going to "Class Council." *See id.* (referring to all Settlement Class Members

as "we the plaintiffs" and stating that "[r]equesting up to $25,000 per plaintiff for a service award . . . will result in each plaintiff being shorted whatever is awarded up to $25,000 from their award"). But the Settlement and Class Notice are clear that any service awards will go to the Plaintiffs, not to Class Counsel. Moreover, Settlement Class Members' distributions will not be reduced by "up to $25,000" each. Instead, Settlement Class Members' distributions will be reduced the pro rata share of the service awards, or, in this case, approximately 28 cents per Settlement Class Member.

Second, even if the objection is construed as a complaint regarding the service award to each Plaintiff, the objection should still be overruled. In the Eighth Circuit, service awards are permitted to class representatives based upon their efforts to "protect the interests of the class; the degree to which the class has benefitted from those actions; and the amount of time and effort plaintiffs expended in pursuing the litigation." *Tussey v. ABB, Inc.*, No. 06-04305-CV-C-NKL, 2012 WL 5386033, at *10 (W.D. Mo. Nov. 2, 2012), *vacated and remanded on other grounds*, 746 F.3d 327 (8th Cir. 2014) (citing *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002)). Here, the Class Representatives performed important work on the case, including helping to develop and review the factual allegations in each complaint and providing key guidance with respect to the Settlement, and for Buchanan and Millwood, their support also included sitting for depositions and answering discovery. *See* Doc. 29-1, ¶ 36. That work materially advanced the litigation and protected the Settlement Class's interests. *Id.* Indeed, their time and effort made this Settlement possible. For the work performed, the requested Service Awards are justified and consistent with other awards approved in the Eighth Circuit and should therefore be approved. *See, e.g.*, *Rogowski*, 2023 WL 5125113, at *6 (awarding the class representatives $25,000 each).

29

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court finally approve the Settlement, grant Plaintiffs' Motion for Attorney's Fees, Costs, Expenses and Service Awards, and enter judgment thereon.

Date: March 7, 2024

**STUEVE SIEGEL HANSON LLP**

*/s/ Norman E. Siegel*

| | |
|---|---|
| John J. Schirger | Norman E. Siegel |
| schirger@sflawyers.com | siegel@stuevesiegel.com |
| Joseph M. Feierabend | Ethan M. Lange |
| feierabend@sflawyers.com | lange@stuevesiegel.com |
| **SCHIRGER FEIERABEND LLC** | 460 Nichols Road, Suite 200 |
| 4520 Main Street, Suite 1570 | Kansas City, Missouri 64112 |
| Kansas City, Missouri 64111 | Tel: 816-714-7100 |
| Tel: 816-561-6500 | Fax: 816-714-7101 |
| Fax: 816-714-6501 | |
| | David M. Wilkerson |
| Melinda R. Coolidge | dwilkerson@vwlawfirm.com |
| mcoolidge@hausfeld.com | **THE VAN WINKLE LAW FIRM** |
| Nathaniel C. Giddings | 11 N. Market Street |
| ngiddings@hausfeld.com | Asheville, NC 28801 |
| **HAUSFELD LLP** | Tel: 828-258-2991 |
| 1700 K Street, NW | Fax: 828-257-2767 |
| Washington, DC 20006 | |
| Tel: 202-540-7200 | Sophia Goren Gold |
| Fax: 202-540-7201 | sgold@kalielpllc.com |
| | **KALIEL GOLD PLLC** |
| | 950 Gilman St., Ste. 200 |
| | Berkeley, CA 94710 |
| | Tel: 202-350-4783 |

Attorneys for Plaintiffs and the Settlement Class

**CERTIFICATE OF SERVICE**

I hereby certify that on March 7, 2024, I filed the foregoing document via the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record.

*/s/ Norman E. Siegel*
Attorney for Plaintiffs and the Settlement Class